## In Re Disbarment of EVANS & ROGERS on the Relation of THOMAS NELSON.

Contract — Between Attorney and Client — For Payment of Costs by Attorney — Champerty — Jurisdiction — In Champerty Proceedings — Attorneys — Professional Duty — Breach of — Champertous Contract — Principal and Agent — Contracts — Administrator — Duties — Compensation. Improper Conduct of Attorneys — Deception Practiced on Court — Indefensible — Relation of Attorney and Client — Attorney Amenable to Summary Jurisdiction of Court — Disbarment — Proof Required.

*Contract—Between Attorney and Client—For Payment of Costs by Attorney—Champerty.*

A stipulation, in a contract between attorneys and client for the payment by the attorneys of the costs of the litigation, is against public policy, champertous, illegal and void. While it is permissible for a near kinsman of a poor suitor, out of charity to assist him in the maintenance of his suit, such kinsman cannot do so as a speculative venture based upon a contract to share in the proceeds in case the suitor should recover.

*Jurisdiction—In Champerty Proceedings.*

Champerty renders an attorney amenable to the summary jurisdiction of the court, notwithstanding it may be effectual as a defense to the enforcement of a contract.

*Attorneys—Professional Duty—Breach of—Champertous Contract.*

An attorney who, in the pursuit of his profession, makes an agreement which is against public policy, is guilty of a flagrant breach of professional duty.

*Principal and Agent—Contracts.*

A party employed to act as agent in securing the services of attorneys, cannot contract to receive a portion of the fees himself as assistant attorney; he cannot be both principal and agent for such a transaction is against public policy and void.

*Administrator—Duties—Compensation.*

In an action by an administrator for damages for the death of his decedent, his duties as assistant attorney are within the scope of his duties as administrator, and he .may not make a contract with his attorneys for additional compensation as assistant attorney in the case.

*Improper Conduct of Attorneys—Deception Practiced on Court— Indefensible.*

The impropriety of attorneys, respondents in disbarment proceedings, on a charge of champerty, appearing before this court, and confessing that they induced this court to render final judgment in their favor, in a previous action, on the ground of their having been guilty of champerty, and afterwards, when confronted with disbarment proceedings, claim they were innocent, is indefensible.

*Relation of Attorney and Client—Attorney Amenable to Summary Jurisdiction of Court.*

The relation of attorney and client is confidential. The attorney by his obligation is bound to discharge his duties to his client with the strictest fidelity, and he is amenable to the summary jurisdiction of the court for dereliction of duty.

*Disbarment—Proof Required.*

The summary proceeding of disbarment is civil, not criminal, but requires more than a preponderance of the evidence. The guilt of the attorney must be clearly established.

(Decided September 15, 1900.)

Original application in this court for the disbarment of Evans & Rogers, attorneys practicing before this court, upon a charge of champerty. Judgment requiring that Evans & Rogers pay over to the clerk of this court for the use and benefit of the widow and minor children of one Nelson a certain sum found to be due said parties, and that unless such payment was made within 60 days each of said parties be permanently disbarred as attorneys of this court.

*Hon. A. C. Bishop, Atty. General,* and *Wm. A. Lee, Deputy Atty. General,* for the State.  *Andrew Howat, Esq.,* of counsel.

*David Evans, Esq.,* and *O. W. Powers, Esq.,* for respondents.

### STATEMENT OF FACTS.

Hon. P. L. Williams, an attorney at law, having filed and presented an information verified by the oath of Thomas Nelson, charging David Evans and Lindsay R. Rogers, attorneys of this court, and partners in the practice of law, with having violated their duties as counselors and attorneys of this court, and moved that the said Evans & Rogers be cited to appear to show cause why they should not be disbarred, and their names stricken from the roll of attorneys, or be otherwise punished according to law, this court, on May 23d, 1900, granted said motion.

Evans & Rogers in obedience to the citation appeared and interposed a general demurrer, which was overruled. They also filed an answer.

Though the information of Thomas Nelson is in the form of an affidavit, it contains all of the elements and meets all the requirements of an information as prescribed by Secs. 122, 123–124 of the Rev. Statutes.

The matter was referred to D. H. Twomey, Esq,, an attorney and counselor of this court to take and report the testimony with findings of fact, which he accordingly did.   The facts found by him are as follows:

### "FINDINGS OF FACTS."

1. "That on and prior to January, 1892, David Evans and Lindsay R. Rogers were copartners in the practice of

law at Ogden, Utah, and continued as such copartners, from said time until long after entering into the contract, of date December 2, 1892, which is attached to the information herein and marked ' Exhibit A.' "

2. "That on, or about, January 21, 1892, one Charles A. Nelson was killed while traveling on the Southern Pacific Railway, at Truckee, California."

3. "That the said Charles A. Nelson left surviving him his widow, Nellie Nelson, and two minor children. He also left two brothers, Alfred H. Nelson and Thomas Nelson surviving him, the latter being a partner in business with the said Charles A. Nelson, at the time of his death."

4. "That after the death of the said Charles A. Nelson, his widow, Nellie Nelson, placed in the hands of said Alfred H. Nelson, who was a practicing attorney at Ogden, Utah, for prosecution, her claim for damages against the Southern Pacific Railway Company, for causing the death of her husband, with authority to employ counsel to prosecute said claim."

5. "That the said Alfred H. Nelson employed Evans & Rogers to prosecute said claim against said Railway Company, and the said Evans & Rogers and Alfred H. Nelson agreed to prosecute an action against the Southern Pacific Railway Company to recover damages from it, on account of the death of Charles A. Nelson, for a contingent fee of one-half of the amount recovered."

6. "That Evans & Rogers and Alfred H. Nelson entered into a contract, by the terms of which Evans & Rogers were to receive and retain two-thirds of the one-half of the amount recovered against the Southern Pacific Railway Company, and the said Alfred H. Nelson was to receive the one-third of the one-half of the amount recovered of said company, which amount Evans &

22 Utah—24.

Rogers agreed to pay him for his services in said case, including the production of witnesses for the prosecution."

7. "That thereafter, Alfred H. Nelson, in contemplation of bringing suit against said railway company, was appointed administrator of the estate of Charles A. Nelson, deceased."

8. "That afterwards the contract, bearing date December 2, 1892, marked 'Exhibit A,' which is in words and figures as follows:

'OGDEN, UTAH, Dec. 2d, 1893.

'We the undersigned agree to give Thomas Nelson one-third of one-half of any amounts which may be collected, whether on compromise or otherwise, in the case of *Alfred H. Nelson, as administrator of the estate of Charles A. Nelson, deceased,* v. *Southern Pacific Ry. Co.,* in consideration of said Thomas Nelson furnishing witnesses necessary to prosecute said case.

'EVANS & ROGERS.'

Was entered into by and between Evans & Rogers and Thomas Nelson, which was substituted for the prior contract between Evans & Rogers and Alfred H. Nelson. That at the time of entering into said contract, most of the witnesses and the facts to which they would testify were known to the attorneys."

9. "That Thomas Nelson attended as a witness at the trial of the case of *Alfred H. Nelson, administrator of the estate of Charles A. Nelson, deceased,* v. *The Southern Pacific Railway Company,* and procured the attendance of one Pascall, at one of the trials of said cause and also the attendance of one Saunders, who was plaintiff in a case against the same company in an action for damages for injuries growing out of the same accident in which Charles A. Nelson lost his life."

10. "That a judgment was recovered by Alfred H.

Nelson, administrator, against the Southern Pacific Railway Company, for the sum of ten thousand dollars, with accrued interest, the amount of which was paid to Evans & Rogers as attorneys for said plaintiff, one-half of which was paid to the widow of Charles A. Nelson, the said Evans & Rogers retaining the other half."

11. "That after the Southern Pacific Railway Company paid the amount of said judgment, with interest and costs to Evans & Rogers, Thomas Nelson demanded from Evans & Rogers, under the contract, 'Exhibit A,' one-third of the one-half of the amount of said judgment, which the said Evans & Rogers refused to pay on the ground that the said Thomas Nelson had not performed his part of the contract."

12. "That after Evans & Rogers refused to pay Thomas Nelson the portion of the fee mentioned in 'Exhibit A,' Nelson employed Mr. Parley L. Williams, an attorney of this court, to bring an action in his favor against Evans & Rogers on said contract, 'Exhibit A,' for one-third of one-half of the amount recovered from the Southern Pacific Railway Company in favor of Alfred H. Nelson, administrator of the estate of Charles A. Nelson, deceased. That the said Williams, in pursuance of said employment commenced said action against Evans & Rogers."

13. "That Evans & Rogers employed one A. G. Horne, an attorney at law residing and practicing in Ogden, Utah, to represent them in said action. That Horne interposed a demurrer to the plaintiff's complaint therein, on the ground that the complaint did not state facts sufficient to constitute a cause of action, which demurrer was sustained by the court. The plaintiff, Thomas Nelson, then filed an amended complaint, to which Mr. Horne, as attorney for Evans & Rogers, the

defendants, interposed a general demurrer, which was sustained."

14. "There was no allegation in either the original or amended complaint in the case of *Thomas Nelson* v. *Evans & Rogers*, that the said Thomas Nelson was a brother of Charles A. Nelson, deceased."

15. "That shortly after the demurrer to the amended complaint, in the case of *Thomas Nelson* v. *Evans & Rogers*, was sustained by the district court and before an appeal was taken to the Supreme Court of this state, Mr. Rogers proposed to Mr. Williams, plaintiff's attorney, that the judgment on the demurrer should be vacated and defendant would withdraw and answer on the merits. This was followed by a stipulation in writing signed by Mr. Rogers and delivered to Mr. Williams, which stipulation was introduced in evidence and marked defendants' 'Exhibit 2.' Evans desired to unite in the stipulation."

16. "I further find from the evidence that at the time the contract between Evans & Rogers and Thomas Nelson, marked 'Exhibit A,' was entered into, the parties thereto did not regard it unprofessional or contrary to public policy, or immoral."

17. "That these disbarment proceedings were instituted by Thomas Nelson in the hope that he, by so doing, would force Evans & Rogers to pay him the money which he claims to be due him under the contract, 'Exhibit A.'"

"Respectfully submitted,

"D. H. TWOMEY,
"Dated June 20, 1900."             "Special Master."

These findings are within the issues and all are supported by the evidence, except the 16th, but do not cover the whole ground.

The following additional facts appear from the record in evidence:

1. That while the ground of the demurrer to the complaint in the action of *Thomas Nelson* v. *Evans & Rogers* to recover on the contract set out in the 8th finding as Exhibit "A," was that the complaint did not state a cause of action, both in the court below, and on the appeal in this court, the only reason assigned, at the hearing upon the demurrer, was that said contract was champertous and illegal as between the parties thereto, and that this court sustained the demurrer and affirmed the judgment solely on that ground.

2. As testified to by David Evans, one of the respondents, the ten thousand dollars recovered from the railroad company, was not paid to the administrator of Charles A. Nelson, deceased, but to Evans & Rogers, and was afterwards distributed in the absence of the administrator from the state, under an order of the Second Judicial District Court, made in the Matter of the Estate of Charles A. Nelson, deceased, one-half to the widow of Charles A. Nelson, and the two minor children, and one-half to Evans & Rogers, as a fee.

3. It also appears from the testimony of the respondent David Evans that while Evans & Rogers advanced to the widow a portion of the costs (the amount does not clearly appear) they did so under an agreement with her that she should repay to them the same, and that after receiving her money from the railway company, she paid to them every dollar so advanced.

4. It is alleged in the answer that by reason of the alleged failure of Thomas Nelson "to advance or pay out any money whatever to secure the attendance of witnesses it became and was necessary for the widow of the deceased Charles H. Nelson, to secure and advance money for their attendance."

5. The record discloses the fact that the widow paid all

the expenses of the litigation, so far as Evans & Rogers are concerned.

6. That the abstract of the record on the appeal to this court in the case of *Thomas Nelson* v. *Evans & Rogers*, a copy of the brief signed by A. G. Horne, as attorney for the respondents, Evans & Rogers, and a copy of the decision of this court on the appeal were attached to the information in the matter now under consideration, and made a part thereof.

7. The abstract of said record contained a copy of the complaint, which among other things, alleged that the railway company, on the 28th day of December, 1898, paid said judgment of $10,000, and interest thereon, amounting to $760.00, and that thereupon in pursuance of said contract of Evans & Rogers with said administrator, Evans & Rogers were paid and received one-half thereof, to wit: The sum of $5,380. This allegation was admitted by the demurrer to said complaint and is not denied by the respondents, in their answer to the information.

8. The complaint also alleged that in the contract with Alfred H. Nelson, Evans & Rogers "undertook and agreed to prosecute said cause (against the railway company) to final judgment, and also to pay and discharge all the taxable costs incurred, and also the costs incident to procuring the attendance of witnesses, and all other costs that might be incurred in the prosecution of the cause." These allegations were admitted by the demurrer to said complaint, and are not denied by respondents in their answer to the information, or contradicted by the evidence.

9. Respondents, in their answer, which was verified by their oaths, made the following allegations:

"5. Respondents further state that in the year 1893,

the said cause of Alfred H. Nelson against the Southern Pacific Company was set for trial at the city of Ogden aforesaid, at which time Thomas Nelson attended said cause as a witness and in the interest of his sister-in-law, whose husband had been killed, and had with him at the time an assignment of all the interest in the contract which was made between said Alfred H. Nelson and said respondents, and demanded recognition for the same by a cancellation of said contract and the execution of a new one in favor of said Thomas Nelson * * * and said Thomas Nelson further stated that while said Alfred H. Nelson could not render the services agreed upon as an attorney, that he, the said Alfred H. Nelson was a poor man, having been financially ruined in speculations in real estate at Ogden; that he desired and requested that nevertheless the said Thomas Nelson should receive the part of the fee agreed upon in order to aid him in his straightened circumstances, and that the said Alfred H. Nelson being then and there in financial difficulties, he wished the contract made in the name of said Thomas Nelson in order to protect him therein, and that the said Thomas Nelson would secure the attendance of the necessary witnesses to prosecute said action, and in view of the fact that the witnesses were beyond the jurisdiction of the court and could not be secured by its process, and believing that said widow and children, by the administrator, had a meritorious cause against said Southern Pacific Company, respondents entered into the contract with said Thomas Nelson set out as an exhibit to the petition and affidavit filed herein." (Exhibit "A" is the one here referred to.)

Bearing upon these allegations, the following occurred in the examination of David Evans:

"*Q.* One more question. Has A. H. Nelson, the real

beneficiary, ever made a demand upon Evans & Rogers, or either of you, for anything under his contract in trust for him, in ' Exhibit A ' that is offered in evidence ? "

"*A*. He did not."

"*Q*. Did he make any complaint ? "

"*A*. No, sir."

"*Q*. Now, at the time this contract was entered into with Thomas Nelson, it was understood that it was being made in and for the benefit of A. H. Nelson, was it ? "

"*A*. It was simply a recognition of the contract in Thomas Nelson's name which the three of us had entered into prior to that time—that was the intention of it— there was no other intention of it."

On the same subject L. R. Rogers testified: "I remember of saying to Thomas Nelson 'You are not a lawyer and this contract is with A. H. Nelson, and he was to render services in the case as a lawyer—I feel very friendly to A. H., and regret his personal situation— his financial condition, but I do not think we ought to divide our fee with you.' He replied, of course he understood that the court work and the actual trial of the case would have to be done by Evans & Rogers even if A. H. Nelson was present.

"He said he recognized the fact and understood fully that Evans & Rogers were better trial lawyers than his brother; he said, my brother would simply assist you in getting witnesses from Nevada, and he would be benefited through me—he is really going to have the benefit out of this contract as I got it in my own name, and he is afraid that some of his creditors might make some trouble about his interest—his financial interest in the event of recovery, and that he is going to have an accounting with A. H. about it afterwards.

"*Q*. Did he say anything that he wanted a new contract made in his own name to protect his brother ?

"*A.* Yes, sir; and I told Mr. Evans I did not think we ought to do it, and Nelson and I had some private talk about it in the absence of Mr. Evans—he was called out of the room, and he said it would be all right he would protect A. H. in it. Owing to the fact that I was connected with A. H. in many lawsuits, and being an old friend of his I thought I ought to do it for A. H. saying that Evans & Rogers would do it if I said so."

BASKIN, J.

The facts disclosed by the record show, in several respects, a violation of professional ethics on the part of the respondents. It is stated in their brief that "Evans & Rogers did not employ Alfred H. Nelson, the latter employed the former on behalf of the widow and minor children of his deceased brother."

If it be conceded that the widow for herself and minor children, had the right to authorize Alfred H. Nelson to employ Evans & Rogers as attorneys, when so authorized he could not, under that agency, legally make a contract with them for the payment of a fee one-third of which he was to receive as assistant attorney in the case. No contract for his compensation as attorney could be legally made except with his clients. No one can be both principal and agent in making a contract. A transaction of that kind is against public policy. *Harris, et al.*, v. *Lynde & Hough*, 49 Cal. 290; *San Diego* v. *S. D. & L. A. R. R.* 44 Cal. 113.

The stipulation in said contract, for the payment of the costs of the litigation by Evans & Rogers, was against public policy and rendered the contract champertous, illegal and void. An attorney who, in the pursuit of his profession, makes an agreement which is so against public

policy, as the contract herein, is guilty of a flagrant breach of professional duty. ,

When Alfred H. Nelson was appointed administrator his duties as assistant attorney were within the scope of his duties as administrator, and after his appointment as , such, he was only entitled to such compensation for his services in the case as the court issuing the letters of administration to him, might, upon a proper showing, allow. Yet notwithstanding this fact, after he had become involved and left the state and ceased to act as assistant . attorney in the case, the contract between Thomas Nelson and Evans & Rogers was entered into, not for the benefit of Thomas Nelson but for the, express purpose of securing to Alfred H. Nelson his share of the fee provided for in his contract with Evans & Rogers.

At the date of the former contract Alfred H. Nelson had not performed the stipulations of his contract, and did not propose to do so. It does not appear that either the widow of Charles A. Nelson, or any one legally authorized to act for the minor children, ever knew of the existence of the contract with Thomas Nelson. Evans & Rogers state in their answer that when Thomas Nelson failed to perform his contract "it became and was necessary for the widow of the deceased Charles A. Nelson to secure and advance money for their attendance." Evans & Rogers did not, as they had contracted to do with Alfred H. Nelson, pay the costs of the litigation. For what they contracted to do in the premises they were to receive only two-thirds of one-half of the amount which might be recovered from the railroad, yet notwithstanding they failed to do all they promised, on the distribution of the funds, they not only put into their own pockets the whole of the fee which they, under the contract, were to receive, but also the fee which Alfred H. Nelson was, under the agree-

ment to receive through Thomas Nelson, amounting to $1,793.33, although the services for which one-third of one-half of the recovery was to be paid were never rendered. Certainly Evans & Rogers were not entitled to more than the amount of the fee, which they, by the contract, were to receive. They were not entitled to more than that sum on a *quantum meruit*, as in an action to recover on a *quantum meruit*, notwithstanding their said contracts were void as against public policy and also void for champerty, their recovery would have been limited to the valuation which they themselves attached to their services in said contracts. Weeks on Attorneys, p. 702 and n. 1.

Neither Alfred H. Nelson or Thomas Nelson were entitled to receive any part or the amount recovered under said contract; therefore, as under the provisions of Sec. 2912 Rev. Stat. the widow and minor children of Charles A. Nelson were the beneficiaries of the action against the railroad company, they were entitled to the sum of $1,793.33 which Evans & Rogers received as an addition to their legitimate fee. This fact is now conceded in the following language of respondent's brief, to-wit: "If Thomas Nelson did not perform the consideration he promised, viz.: secure the attendance of the non-resident witnesses, then Evans & Rogers, who by that contract were made trustees of one-third of one-half of the recovery, would have been grossly derelict in duty, violating the rights of their clients, the real beneficiaries, had they paid said Thomas."

It appears from the record that Alfred H. Nelson, the administrator, was absent from the state when the order of distribution was made, and while it does not in express terms appear that Evans & Rogers obtained the order of distribution, it is inferable that they did. Whether

they did or did not procure that order, they knew its provisions and received one-half of the recovery, with full knowledge of all the facts in the case. Neither does it appear that the widow or any one legally qualified to act for the minor children appeared or was represented in the proceeding in which said order was granted, or that Evans & Rogers advised the widow, or any representative of the minor children, that the widow and minor children were entitled to $1,793.33 more than allowed them in the order of distribution.

In support of the demurrer to the complaint in the case of *Thomas Nelson* v. *Evans & Rogers*, on the appeal in this court, A. G. Horne, as attorney of David Evans, presented on the argument a brief in which was cited, among other cases, *Croco* v. *Oregon Short Line Ry. Co.*, 18 Utah, 321, and *Lyon* v. *Hussey*, 31 N. Y. Supp. 281.

In the former case this court decided that "Under Sec. 3683 (C. L. U.) it was competent for an attorney and client to agree upon the attorney's compensation, and such compensation may be made contingent upon success, and payable by percentage or otherwise, out of the proceeds of the litigation. But it was not competent for the attorney in consideration thereof, to agree to pay the advance fees and costs of suit thereafter to be commenced."

The contract upon which this decision was based was one made by Evans & Rogers in which they had agreed, in consideration of receiving forty per cent. of the recovery in that case, to render their services as attorneys, and in addition thereto to pay the costs required to be advanced to the clerk, and to the sheriff for serving the summons, and whatever might be necessary to pay the fare of witnesses from Idaho to the place of trial.

By this citation this court's attention was directly called to the fact that the present instance is not the only one in

which the respondents have made champertous contracts in the pursuit of their profession as attorneys.

In the last-mentioned case of *Lyon* v. *Hussey*, 31 N. Y. S. 181, Mr. Justice O'Brien, in his opinion at special term, said:

"It is true that champerty and maintenance are abolished in this state except so far as preserved by the Revised Statutes, and what remains would not literally touch an agreement such as is here sought to be enforced. Apart, however, from any statutory prohibition, there can be no question but that such an agreement would have been void at common-law; and, in addition to the illegality under the early statutes in this state relating to maintenance and champerty, such an agreement was made a crime. The penalty with the offense having been repealed, and no express statute existing which in terms decrees that an agreement of the character alleged is illegal, it yet remains to be determined whether such an agreement can be enforced. Having in mind the fact that it is void at common law, I do not see upon what ground its legality can be placed, unless some express sanction or authority can be found in some statute or decision which would give it support. Such agreements directly tend to promote litigation, to disturb the peace of individuals, and are directed to subverting the settled policy of this state, which, as shown by the history of the enactments on the subject, more particularly those applicable to attorneys (sections 73 and 74 of the Code) has sought to prevent the stirring up of strife and litigation. Hence, concededly, an entire stranger to the transaction obtruded himself into it, and not only instigated a suit, but agreed to procure counsel and maintain the suit, the fruits of which, if successful, he was to share; and more than this, he undertook to furnish the evidence upon which the recovery was

to be assured. Such an agreement is repugnant to every instinct of propriety and justice, and the portion of it which provides for pay as a consideration for procuring evidence . should be regarded as immoral, illegal and void."

And Mr. Justice Van Brunt, on the appeal of the case from the special term, said, "It may not be necessary to add anything to the opinion which was handed down upon the decision of the demurrer in the court below; but it may be proper to call attention to the fact that part of the contract, damages for breach of which this action was brought to recover, was to furnish evidence to establish the claim of defendant in a litigation to be commenced. It is clear that such a contract is against public policy. The recognition of contracts of this character would be the introduction of all sorts of fraud and deception in proceedings before courts of justice, in order that parties might receive compensation out of the results of their successful manufacture of proofs to be presented to the court, thus holding out a premium upon subornation. The mere statement of the proposition seems to show that such contract should never be recognized in any court of justice The judgment should be affirmed, with costs."

In the above case the champertous contract was made by a layman with the plaintiff. Such contracts when made by an attorney at law, in pursuit of his profession, are still more obnoxious.

On the authority of the two cases thus cited, and others of the same import, cited in said brief, we sustained the demurrer. If the respondents had refused to pay the claim made by Thomas Nelson and defeated a recovery for the purpose of protecting the interests of the widow and minor children, it would have been a strong mitigating circumstance in their favor. But such was not their

intention. The facts in the case conclusively show that they resisted the claim of Thomas Nelson in order that they might retain for themselves the amount sought to be recovered. In respondent's answer they failed to state that it was their intention to protect their clients, or that even now they intend to pay them the amount withheld from them in the disbursement heretofore mentioned. The declaration in the respondent's brief that they were made trustees of that amount for their clients, the real beneficiaries, was evidently an afterthought. At the argument before us, when the attention of respondent's counsel was called to that declaration, one of them, in the presence of one of the respondents, and in the face of the patent facts disclosed in the case, and notwithstanding his name was attached, as an attorney, to said brief, disputed that declaration, and declared that the respondents were entitled to retain the whole sum distributed to them; and although the respondent, who was present, had personally appeared and made an argument on the demurrer to the information, he failed to interpose any objection to the claim of his attorney, or declare that it was then, or ever had been his intention, or the intention of his co-respondent, to pay to their clients said amount of $1,793.33, withheld from them in the distribution of the funds.

It appears from the evidence, and the referee found that Alfred H. Nelson and Thomas Nelson were brothers of the deceased Charles A. Nelson. These facts were not disclosed in the case of *Thomas Nelson* v. *Evans & Rogers*, but were presented to this court, for the first time, in the answer and evidence of respondents in the pending matter, and they now contend that these additional facts show that this contract with Thomas Nelson was not champertous. If this were conceded, then the respondents stand before this court, confessing that they

induced this court to render a final judgment in their favor on the ground of having been guilty of champerty, when they knew they were innocent. The impropriety of such an attitude is indefensible.

As a general rule, no one will be permitted to plead his own wrong in defense of an action; but in transactions which are prohibited by law, or are against public policy such a defense, as it tends to discourage such transactions, is permissible. Such a defense, however, when sustained, does not condone the wrong, but merely leaves the parties in *statue quo*, and prevents either of the guilty parties from obtaining any relief in the courts of justice. "Champerty renders an attorney amenable to the summary jurisdiction of the court" (Weeks Attorneys, Sec. 87–88, 350), notwithstanding it may be effective as a defense to the enforcement of a contract.

We are of the opinion that notwithstanding Alfred H. Nelson and Thomas Nelson were brothers of the deceased, under the facts disclosed the contract between Thomas Nelson and Evans & Rogers is champertous.

While it is permissible for a near kinsman of a poor suitor, out of charity to assist him in the maintenance of his suit, such kinsman cannot do so as a speculative venture, based upon an agreement to share in the proceeds of the litigation in case the suitor should recover. Both the law of maintenance and champerty forbid the meddling by any person, not a party to the suit, whatever may be his relation to the suitor, for the purpose of speculation or profit.

It is clear that the contract with Thomas Nelson was entered into for the benefit of Alfred H. Nelson, the administrator. Its object was to indirectly obtain for Alfred H. Nelson a share of the fruits of the litigation as an attorney's fee, which it was not intended he should

earn. The transaction was an attempt on the part of Alfred H. Nelson and Thomas Nelson to secure a profit from the death of their brother to the detriment of his widow and minor children. The widow and minor children were not parties to the contract, and it does not appear that they were ever informed or knew of its existence.

This contract was not only champertous, but also obnoxious because it was against the interests of the widow and minor children, and was entered into by their attorneys, whose obligations as such, required them to guard the interests of their clients with strict fidelity.

The respondent David Evans testified that he knew nothing about the demurrer until Mr. Rogers, or some one else, told him that it had been sustained.

Mr. Rogers testified that he knew the demurrer was interposed, but supposed that "it was a time server;" that after it had been sustained he learned from Mr. Williams that the district court had sustained it on the ground that the contract on its face was champertous; that he thereupon stated to Mr. Williams that he did not want to make that defense, but would rely on the nonperformance of the contract by Thomas Nelson.

It further appears from the evidence that afterwards Mr. Rogers proposed to Mr. Williams, who was the attorney for Thomas Nelson, that the judgment on the demurrer should be vacated, the demurrer withdrawn, and an answer should be made raising an issue on the merits, and that a stipulation to that effect, in which Mr. Evans was willing to join with Mr. Rogers was drawn up and presented to Mr. Williams, who declined to enter into the proposed stipulation. When the case was reached in this court on appeal, A. G. Horne, the attorney for the respondents, at the request of Mr. Rogers, withdrew his appear-

22 Utah—25.

ance for him, but not for Mr. Evans. Both of the respondents were aware that the only tenable ground of the demurrer was the champertous character of the contract, in the form in which it was set out in the complaint.

The respondent Rogers must have been aware that the said withdrawal would not withdraw the question of champerty from consideration, but that that could only be done by the joint action of both respondents. Both respondents are able attorneys, and of long experience in the practice of law, and if the question of champerty presented by their attorney was contrary to their wishes, and was made in the first instance without their knowledge, and they were still desirous of withdrawing the question from further consideration, and having the judgment set aside for the purpose of trying the case on its merits, this end could have readily been accomplished by stating to this court, either through their attorney, or personally, that the contract, on account of facts not disclosed by the complaint, was not in fact champertous, and that their attorney had raised that question without their knowledge and against their wishes, and requested a reversal of the judgment. If this had been done this court would not have hesitated to grant the request. But even if this course had been pursued it would not have changed either the character of the contract or the acts of the parties, which the evidence before us has fully disclosed.

The relation of attorney and client is confidential. The attorney by his obligation is bound to discharge his duties to his client with the strictest fidelity. He is not permitted to do anything himself, or permit anything to be done in the pursuit f his employment, which he is able to prevent, against the interests of his client. He is amenable to the summary jurisdiction of the court for dereliction of duty. Not for the purpose of punishment,

"but for the protection of the court, the proper administration of justice, the dignity and purity of the profession, the public good, and the protection of clients." *State ex rel.* v. *Finn*, 52 Pac. Rep. 756; *Ex parte* Wall, 107 U. S. 273.

He is presumed to know what the duties of an attorney are, and cannot plead ignorance, or that in violating a plain duty he did not intend to commit a wrong. The summary proceeding of disbarment is civil and not criminal. 6 Ency. Pl. & Pr. 709; Matter of Randall, 159 N. Y. 219; *State* v *Clark*, 46 Ia. 155. In that proceeding, however, more than a preponderance of the evidence is required. The guilt of the attorney must be clearly established.

Thomas Nelson stated, and the referee found that he instituted these proceedings with the hope that it would force the respondent to pay his claim. While this fact might detract from or neutralize the force of his testimony, it cannot excuse the wrongful acts of the respondents.

There is no conflict in the testimony regarding the facts found by the referee, except No. 16, or the additional facts enumerated and found by us. These facts conclusively show that the respondents have violated their duties in the several respects mentioned in this opinion.

In *Bradley* v. *Fisher*, 80 U. S. 355, Mr. Justice Field, in the opinion, said: "Admission as an attorney is not obtained without years of labor and study. The office which the party thus acquires is one of value, and often becomes the source of great honor and emolument to its possessor. To most persons who enter the profession, it is the means of support to themselves and their families. To deprive one of an office of this character would often be to decree poverty to himself and destitution to his family. A removal from the bar should therefore never be

decreed where any punishment less severe—such as reprimand, temporary suspension, or fine—would accomplish the end desired."

In view of the facts thus stated, and the facts that the respondents have for a long time maintained good standing before the courts of this State, and are men of good morals, we do not think they should be absolutely disbarred, but that a judgment similar to that rendered in *In re* Tyler, 71 Cal. 358, 78 Cal. 307, under a statute relating to attorneys, of which the statute of this State, on that subject, is a transcript, and similar to the one under which the case of *Slemmer* v. *Wright*, 54 Ia. 164, was rendered, should be entered.

It is therefore ordered and adjudged that each of the respondents be deprived of the right to practice as attorney or counselor at law in any and all of the courts of this state until they shall have deposited, or caused to be deposited with the clerk of this court, subject to the order of this court, the sum of $1,793.33, with interest thereon, at the rate of eight per cent. per annum, from the 28th day of December, 1898, up to the date of the deposit, for the use and benefit of the widow and minor children of Charles A. Nelson, and pay the costs of this proceeding, including the special master's fee of $175, and the stenographer's fee of $54.40. And if they fail, within sixty days from the date of the entry hereof, to show to this court that they have made such deposit, and paid the costs, that then an order be made and entered permanently disbarring each of the respondents and directing that their names be stricken from the roll of attorneys and counselors at law.

MINER, J., concurs.

I concur in the judgment herein, the same, so far as it goes, being in accord with my views. I am of the opinion, however, from an examination of the brief, filed on behalf of the respondents, and of the record, the infliction of some punishment, other than the mere payment of money, by the respondents, which, as now appears from their brief, is admittedly due from them, would be warranted and justified. Where an attorney is guilty of deliberately violating the confidence reposed in him by the court, and his duty to his client, the punishment ought to be commensurate with his wrongdoing. The dignity of the court, the purity of the profession, the peace of individuals, the protection of clients, and the public good alike demand this.

BARTCH, C. J.