DAVE S. KLOSS, JR., AND STEPHEN A. GUILFOYLE, *Plaintiffs in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

Division A.

Opinion Filed March 9, 1928.

434

*Kelly & Casler,* for Plaintiffs in Error;

*Fred H. Davis,* Attorney General, and *Roy Campbell,* Assistant, for the State.

ELLIS, C. J.—The plaintiffs in error were convicted of robbery and sentenced to a term of years in the State prison. There were motions for a new trial and in arrest of judgment. Both motions were overruled and the defendants took a writ of error.

.There are nineteen assignments of error, eight of which are not argued and are therefore treated as abandoned. See Lamb v. State, 50 Fla. 106, 38 South. Rep. 906; Mathis v. State, 45 Fla. 46, 34 South. Rep. 287.

The fourth, fifth, sixth and seventh assignments are grouped in the brief but they present but one question, which is:.was the evidence sufficient to support the verdict? Under this head counsel in their brief discuss the twenty-ninth ground of the motion for a new trial which attacks certain charges given.by the court.: .Seven charges

are thus attacked; none of them is made the subject of an assignment of error.

Counsel, however, discuss the propriety of a certain charge not made the basis of an assignment of error, under assignments resting upon propositions wholly different and in no wise related except as having occurred in the same case. One cardinal rule relating to appellate practice in this State, which has received at the hands of this Court as much notice as any one other perhaps, is that in preparing assignments of error each error relied upon should be clearly and distinctly specified and separately assigned and that where a single assignment attacks a plurality of rulings of the trial court, whether upon the pleadings, the admission or rejection of evidence, or the granting or refusal of instructions to the jury, it will be unavailing unless all such rulings so grouped *en masse* are erroneous. This rule makes for celerity and accuracy in the disposal of this Court's business and it seems that the long list of decisions by this Court referred to in the books would be sufficient notice to the bar of its existence.

We will not consider the assignments above mentioned nor that portion of the brief under them; not only because the rule referred to has not been observed but for the further reason that the instructions criticised were, with the exception of one, sound in law and appropriate to the case.

One of the instructions numbered six in the motion for a new trial and one of those grouped under the twenty-ninth ground of the motion merits the reproachful comments made by counsel. In the charge criticised the trial judge said to the jury that ''Another matter of vital importance here, gentlemen, and to which I desire to call your attention is, that lawyers are a necessary evil to a certain extent; they are engaged by their respective clients to represent their clients' interest in court; lawyers usually look through the glasses furnished by their clients and

naturally, if they are good advocates they see the facts
from the direction of their clients and in their earnest and
serious effort to protect the interests of their clients they
are not as liable to remember all of the little details in re-
lation to the testimony that might affect their clients, as
you gentlemen of the jury are; and I therefore, say to you,
that in weighing the evidence in this case, while the law-
yers are of great importance in helping you to marshal the
evidence and get the idea in your heads as to the rules of
evidence, yet you are not to take the evidence as given to
you by the respective lawyers, but must be confined to
the testimony given in court.''

We consider that instruction to the jury to be so full of
potential evil, so replete with inimical error, as practically,
to the extent of the judge's influence on account of his
position, to be a denial of the defendant's constitutional
right to be represented by counsel.

The general denunciation by the trial court of lawyers
as an evil and as a class whose members see their activities
at the bar of justice to further their clients' interests and
who by reason thereof are not likely (liable was the word
used) to remember all the little details of the testimony
that might affect their clients, was in effect to disparage
the efforts of the defendants' counsel in the present case,
to strip their advocacy of whatever benefit to the defend-
ants might flow from the character and ability of their
counsel. It held them up to scorn and derision as legal
charlatans who, disregarding their obligations to the court
and the State to aid in the administration of justice and
the correct solution of legal problems in a court of law,
sought only the selfish interests of their clients which the
charge tacitly assumed to be their escape from the conse-
quences of the criminal act with which they were charged.

The charge rested upon a fallacious assumption which
is refuted by the history of our excellent government, the

experience of the courts, the oath of the attorney and the elemental principle which constitutes the justification for the existence of the lawyer class as aids and not hindrances to the functioning of courts of justice.

The right which the Constitution secures to a person charged with crime to be heard by counsel is a substantial right. It marks one of the steps in the progress of our civilization and constitutes one of the elements of individual liberty. The right is the right to be represented by an officer of the very court to which one is called to answer; an officer of the State's institution, honorable, learned and conscientious, commissioned by the State and entrusted by reason of character and learning to aid the State and its courts in the administration of justice. To say that an accused person's counsel is evil who is hired to further the interests of his client which are assumed to be to defeat justice and therefore is incapacitated to remember the "little details in relation to the testimony that might affect their clients," especially if the statement is made by the trial judge who may be supposed to speak by the authority of experience, is to nullify, to the extent of the judge's influence, the wise and beneficient provision of the Constitution that a man may have his day in court and be heard by counsel.

An attorney is by his obligation bound to discharge his duties to his client with strictest fidelity. People *ex rel.* Attorney General v. Beattie, 137 Ill, 553, 27 N. E. Rep. 1096; In re Evans, 22 Utah 366, 62 Pac. Rep. 913, 83 A. S. R. 794, 53 L. R. A. 952.

He is answerable to the summary jurisdiction of the court for dereliction of duty. Lynde v. Lynde, 64 N. J. Eq. 736, 52 Atl. Rep. 694, 97 A. S. R. 692, L. R. A. 471.

The relation of attorney and client involves the highest personal trust and confidence. Ott v. Hood, 152 Wis. 97, 139 N. W. Rep. 44, L. R. A. (N. S.) 524.

An attorney is an officer of the court and he owes the duty of good faith and honorable dealing to the courts before whom he practices his profession. In re Durant, 80 Conn. 140, 67 Atl. Rep. 497, 10 Ann. Cas. 539, 2 R. C. L. 939.

His high vocation is to *inform* the court as to the *law* and *facts* of the case and to *aid* it in doing *justice* and arriving at a *correct* conclusion. He violates his oath of office when he resorts to deception or allows his client to do so. He is under no obligation to seek to obtain for those whom he represents that which is forbidden by law. 2 R. C. L. 939.

We think that the charge, which was neither the law nor a correct criticism of counsel nor in any wise within the legal power or duty of the court to give was harmful error in a high degree and the proceedings to that point in the trial were vitiated.

A new trial should have been granted. For error in denying the motion the judgment is reversed.

STRUM AND BROWN, J. J., concur.

WHITFIELD, P. J., AND BUFORD, J., concur in the opinion and judgment.

TERRELL, J., concurs in the conclusion.