[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 352 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 353 
Jennie M. Watkins brought her action against the Atlantic Coast Line Railroad Company for damages for the wrongful death of her husband caused by running a train upon an automobile which the deceased was driving over a railroad crossing at a place called Seffner in Hillsborough County.
The declaration alleged that Watkins was driving his automobile along the public highway in the town of Seffner about 7:55 o'clock on the morning of March 31, 1926; that at the point where the public highway crosses the tracks of the railroad company the defendant carelessly and negligently *Page 354 
propelled and ran its train against the automobile which was driven by Watkins and he was killed.
The defendant pleaded first, not guilty; second, that plaintiff's husband attempted to cross the tracks immediately in front of the approaching train, the presence of which was known to him or which he could have known by the exercise of reasonable care, thereby proximately contributing to his own death. The third plea was in substance the same as the second and concluded with the averment that the negligence of the plaintiff's husband was the cause of his death.
There was a trial on the issues joined and a verdict for the plaintiff in the sum of ten thousand dollars and judgment entered for the plaintiff.
Seven assignments of error were alleged upon which the defendant intended to rely for reversal of the judgment to which a writ of error was taken. All errors assigned are discussed in the brief of counsel except the fourth and fifth. Those assignments were intended to present the point that the court should not have permitted the plaintiff after the defendant had closed its evidence and rested its case to introduce evidence not in rebuttal but presenting new issues not "framed by the facts produced by the plaintiff and the defendant by their testimony." As these two assignments of error are not discussed they will be treated as abandoned. See Southern Express Co. v. VanMeter, 17 Fla. 783; Kloss v. State,95 Fla. 433, 116 So. Rep. 39; Cross v. State, 89 Fla. 212, 103 So. Rep. 636; Hoodless v. Jernigan, 46 Fla. 213, 35 So. Rep. 656; Tampa Electric Co. v. Bazemore, 85 Fla. 164, 96 So. Rep. 297.
At the close of the plaintiff's evidence the defendant moved for a directed verdict. The overruling of that motion is the basis of the first assignment of error. There is no merit in this assignment. *Page 355 
The plaintiff proved the death of her husband to have been occasioned by an accident at a railroad crossing in which the automobile which he was driving was hit by the defendant's train. She introduced evidence to show the age, life expectancy, and earning capacity of her husband, the friendly relations between them, her age and the condition of her health.
Defendant contends that the declaration was not framed under the statute raising presumption of negligence on proof of damage by railroad cars; that the plaintiff should have introduced evidence of negligent operation of the train by some breach of duty on the part of those operating the train and that such negligence caused the injury; that the plaintiff by resting her case when she did shifted to the defendant the burden of proof which it was not under the law required to sustain at that stage of the case.
If the death of the plaintiff's husband was caused by the wrongful act, negligence or carelessness of the defendant corporation the plaintiff had a cause of action against the defendant. See Sects. 7048, 7047, Comp. Gen. Laws 1927. (Sec. 4961 Rev. Gen. Stats. 1920); Stinson v. Prevatt, 84 Fla. 416, 94 So. Rep. 656.
When damage is done to a person by a railroad company by the running of its locomotives, or cars, or other machinery or when the damage is done by any person in the employ and service of such company the company is liable for such damage unless the company shall make it appear that its agents exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company. See Sec. 4964 Revised General Statutes 1920; 7051 Comp. Gen. Laws 1927.
Under the above statute it has been held that the burden of proving the injury is on the plaintiff and the burden of showing absence of negligence is on the defendant. See *Page 356 
Seaboard Air Line Ry. v. Smith, 53 Fla. 375, 43 So. Rep. 235; F. E. C. Ry. Co. v. Welch, 53 Fla. 145, 44 So. Rep. 250; F. E. C. Ry. Co. v. Carter, 67 Fla. 335, 65 So. Rep. 254; Tampa Electric Co. v. Barber, 81 Fla. 405, 88 So. Rep. 302; Stevens v. Tampa Electric Co., 81 Fla. 512, 88 So. Rep. 305; Payne v. McKinnon, 81 Fla. 583, 88 So. Rep. 495; Davis v. Cain, 86 Fla. 18, 97 So. Rep. 305; Dina v. S. A. L. Ry. Co., 90 Fla. 558, 106 So. Rep. 417.
The above decisions and many others of this court have settled the question raised by the first assignment of error against the contention of the plaintiff in error.
The doctrine may be considered as established that in a case where one is entitled to bring an action against a railroad company for damages for personal injury of another or for the wrongful death of one caused by the running of its locomotive cars or other machinery it is only necessary for the plaintiff in the declaration, after alleging matter proper to be included in the inducement, to allege the injury sustained; that it was caused by the railroad company; that the act causing the injury was negligently done and the damages sustained; that when the trial occurs the plaintiff is only required to prove or show the injury; that it was caused by the railroad company and the damages sustained. When that is done the burden shifts to the railroad company to affirmatively show that its agents or employees used all ordinary and reasonable care in the transaction.
In such case the presumption of negligence arises against the railroad where evidence is offered by the plaintiff showing or tending to show the injury by the defendant, and that presumption is not removed until and when the defendant company has made it to appear that its agents have exercised all ordinary and reasonable care. See Seaboard *Page 357 
Air Line Ry. Co. v. Myrick, 91 Fla. 918, 109 So. Rep. 193.
The declaration contained all the required allegations under the provisions of the statute mentioned and the cause was controlled by it.
The remaining assignments of error may be considered together. While they involve two or more propositions, they are not only related but interdependent. When the plaintiff produced evidence to show that the injury to her husband was caused by the act of the defendant in running its train and the damages which she had sustained she rested her case. The defendant then proceeded to show by testimony of witnesses that its agents exercised all ordinary and reasonable care in the circumstances. As this court has held, in such case the plaintiff may offer in rebuttal such evidence as tends to overcome the probative force of the evidence submitted by the defendant.
We said in the Myrick case, supra; "If in a given case the defendant railroad company by evidence shows that its employees used such ordinary precautions as the exigencies of the case required to warn all persons who might be upon the public highway near a crossing of the approach of a train, a traveler who may be injured by the train cannot recover damages from the railroad company for such injuries, unless he makes it to appear from the evidence that the defendant company was guilty of negligence in failing to observe some duty which it owed to the public in general, or to the injured person in particular, and that such failure was the proximate cause of the injury."
There can be no merit in the contention that when the defendant is put to the proof to sustain the burden which the law casts upon it, the plaintiff may not cross question the witnesses or offer rebuttal evidence to contradict them. The question of negligence in the operation of a train is one *Page 358 
which must be resolved by a consideration of many things. The condition of the machinery and track in relation to the speed at which the train is driven; the environment at the point of the accident where it occured at a crossing; the speed of the train in relation to the fixed or temporary environment at the spot where the accident occurred; the signals given of the train's approach, are matters to be considered in determining the question whether the train was operated negligently. The phrase "all ordinary and reasonable care" is susceptible of no hard and fast definition. What may be ordinary and reasonable care in some circumstances may not be so in another case; and where ordinary and reasonable care is not exercised the presumption of negligence of course is not overcome. Negligence has been defined by this Court to be the "failure to observe for the protection of another's interest such care, precaution and vigilance as the circumstances justly demand and the want of which causes him injury." See Jacksonville St. R. Co. v. Chappell, 21 Fla. 175; Florida R. Co. v. Sturkey, 56 Fla. 196, 48 So. R. 34; S. A. L. Ry. Co. v. Mullin, 70 Fla. 450, 70 So. R. 467, Ann. Cas. 1918; A 576 N; Morris v. Florida C. P. R. Co., 43 Fla. 10, 29 So. R. 541.
In the case last cited the court speaking through Mr. Chief Justice Taylor noted that the statute mentioned, Chapter 4071 Acts of Legislature 1891, Sec. 4964 Rev. Gen. Stats. 1920, was adopted from the statutes of the State of Georgia and in construing the act referred to the case of Crawford v. Southern Railway Co., 106 Ga. 870, 33 So. E. R. 826, and Holland v. Sparks, 92 Ga. 753, 18 So. E. R. 990, were cited, in which the court of that State said: "What will constitute the amount or kind of diligence which will be required as 'ordinary and reasonable', must necessarily vary under different circumstances. It cannot be measured or ascertained by any fixed and inflexible *Page 359 
standard, because the words just quoted are themselves relative terms, and what, under some conditions, would be ordinary and reasonable diligence might under other conditions, amount to even gross negligence." The Supreme Court of Georgia, in the cases referred to, concludes the discussion of the question with the following statement; "The measure of diligence due, therefore, by a railroad company to any person is a relative one, and what is or is not due diligence must be arrived at in every case with reference to the surrounding circumstances and the relations which, for the time being, the company and the person in question occupied toward each other."
After the plaintiff concluded her evidence in chief the defendant called a witness by whom to prove that he heard the train pass, the bell ring and the usual noises which attend the passing of a train. On cross examination by plaintiff's counsel the witness testified that there were cars on the track which ran along by the side of the warehouse or building in which the witness was working. Counsel then asked the following question: Q. "How close were those cars to the highway?" Defendant objected to the question upon the ground that it was not in cross examination. The objection was overruled and that action of the court is made the basis of the second assignment of error.
The witness afterwards in response to questions to which there were no objections proceeded to give an unclear and rather hazy description of the location of the building with reference to the highway and railroad track and the position of the cars with relation to the highway and building. Counsel argues that all of that was "evidence of obstruction on the crossing when the accident occurred" and the court erred in admitting it.
The questions were in fact not in cross which brought out all such information, if the answer can be referred to as information *Page 360 
which is doubtful because it is exceeding difficult if not impossible to extract any idea from the words of the witness as to the relative position of house, side track and cars with reference to the highway and Mr. Watkins' position on the latter as he approached the track.
In view of the fact that counsel are often allowed to go far afield in the cross examination of a witness and the limit often rests within the court's discretion, and the further fact that evidence was later received upon the same subject and that the statute declares against the granting of new trials for the improper admission of evidence where it appears that the error complained of has not resulted in a miscarriage of justice, Sec. 4499 Comp. Gen. Laws, and that not much if any information was obtained and objections were not made to the questions as they were propounded, we are of the opinion that the assignment should not be sustained.
The third assignment presents the point that the plaintiff should not have been permitted over the defendant's objection after she had closed her case to introduce evidence the purpose of which was to show that the operation of the train at the time and place of the accident was in view of the surrounding circumstances negligent and careless.
What has already been said is a sufficient answer, we think, to the contention put forth by that assignment. It is not a question of new and surprising issues. The allegation of the declaration that the operation of the train was negligent at the time and place of the accident put the defendant to proof affirmatively that the operation of the train was with "ordinary and reasonable care" just so soon as plaintiff's evidence was introduced tending to show the injury and damage.
We have undertaken to show that the solution of that question depended upon the existence of many things at *Page 361 
the time and place of the accident and the relations which for the time being the company and Mr. Watkins occupied towards each other.
The next assignment, which is the sixth, is based upon the refusal of the court to instruct the jury peremptorily for the defendant at the close of the testimony. A peremptory instruction for the defendant would not have been justified unless the evidence would not have supported a verdict for the plaintiff. It must have been apparent that no sufficient evidence had been submitted upon which the jury could legally have found a verdict for the plaintiff. See Sec. 4363 Comp. Gen. Laws 1927; Williams v. LaPenotiere, 32 Fla. 491, 14 So. R. 157; F. C. and P. Ry. Co. v. Williams 37 Fla. 406, 20 So. R. 558; S. A. L. R. R. Co. v. Mosley, 60 Fla. 186, 53 So. R. 718; A. C. L. R. R. Co. v. Pelote, 62 Fla. 121, 56 So. R. 496; Rogers Co. v. Meinhardt Bros., 37 Fla. 480, 19 So. R. 878.
The relation of a railroad company operating a train at a railroad crossing and a traveler on the public highway desiring to cross the railroad track at the crossing involves reciprocal rights and obligations. The railroad company's trains have the right of way and persons on the highway should give precedence to the passing trains. It is as much the duty of a person traveling upon the highway who is about to cross a railroad track to use "ordinary care and prudence" to ascertain if a train is approaching upon the track as it is the duty of the railroad company to warn by appropriate signals all persons who may be upon the public highway of the approach of a train which is about to cross the public highway. In the case of S. A. L. Ry. Co. v. Myrick, supra, we said that: "The statute merely places upon the railroad company the burden of showing affirmatively that such warnings were given whenever an action for damages for personal injury" grows out of a collision *Page 362 
between a train of the railroad company and a traveler on the public highway at a crossing. See also So. Ry. Co. v. Mann,91 Fla. 948, 108 So. R. 889, in which Mr. Justice Terrell, speaking for the Court, said "it was equally the duty of the plaintiff (Mann) to approach the crossing with ordinary care and prudence, and if he fails to do so, he must suffer the consequence of his conduct.
This court in the case of Germack v. Florida East Coast Ry. Co., 95 Fla. 991, 117 So. R. 391, having under consideration the same subject, adopted the standard of care required of a person in crossing a railroad track to be applied in actions to recover damages for personal injuries received by collision with a train at a railroad crossing which was announced by the Supreme Court of the United States in the case of B. O. R. R. Co. v. Goodman, 275 U.S. 66, in which it was said: "When a man goes upon a railroad track he knows that he goes to a place where he will be killed if a train comes upon him before he is clear of the track. He knows that he must stop for the train, not the train stop for him. In such circumstances it seems to us that if a driver cannot be sure otherwise whether a train is dangerously near he must stop and get out of his vehicle, although obviously he will not often be required to do more than stop and look."
While the standard of conduct to be observed by a traveler on the public highway who desires to cross a railroad track is sound, the Germack case, supra, recognizes the doctrine that if the injury was caused solely by the negligence of the party injured there can be no recovery, but if both the injured and employees of the company were at fault there may be a recovery, but the damages will be reduced in proportion to the contributory negligence of the injured party.
We experience great difficulty in undertaking to apply *Page 363 
the principle above announced to the case at bar because it is almost impossible to obtain any clear, definite impression from the evidence as to the obstacles, features or obstructions constituting the factors rendering the particular crossing peculiarly dangerous both from the company's viewpoint as well as the traveler's. In one case the dangerous character of the crossing may be said to be subjective and the other objective. All railroad crossings where the highway and railroad track intersect are dangerous in a sense but some are more dangerous than others due to nearby embankments, trees, houses and cars standing on side tracks which obscure or at least interfere with the view of the engineer or fireman in control of the train, rendering it impossible or difficult to see an approaching traveler on the highway on the one hand and which obscures the view by a traveler on the highway of an approaching train, on the other. The railroad company's employees in charge of an approaching train should use all ordinary and reasonable care to avoid injury to a traveler on the highway desiring to cross the track while the latter must use at least as high degree of care to avoid injury to himself; and the degree of care required depends necessarily upon the conditions existing at each crossing at the moment when a train is approaching it.
A mere perfunctory blowing of a whistle and ringing of a bell at or near a crossing to give warning of an approaching train where it is being driven under such circumstances and at such speed as to reduce the so-called warning of its approach to its minimum value for the prevention of injury to a traveler on the highway desiring to cross the track of the railroad may not be sufficient to discharge the obligation of the railroad company at such time and place.
It is conceivable that a crossing in a city or town or even a village, such as Seffner, may be surrounded by such obstructions *Page 364 
as trees, houses and box cars on a siding at the crossing as to interfere with the view of an approaching train as well as the ability of those in charge of the train to see the highway and those who may be upon it a reasonable distance from the crossing. While such conditions are factors of danger warning alike the traveler on the highway desiring to cross the railroad track and the persons in charge of the approaching train, they are conditions which each are bound to observe and use ordinary and reasonable precaution to overcome to the end that the railroad company may discharge its duty and the traveler on the highway avoid injury.
As well as we can gather from the evidence in this case such were the conditions existing at the crossing in Seffner on the morning of March 31, 1926, when Mr. Watkins was killed by a passing train of the defendant company at the crossing.
The testimony of the engineer in charge of the defendant's train that morning exhibited such an unsusceptible sense of duty as to amount to almost callous indifference. He seems to be of that type of person which, pretending a regard for the rights of others, deems duties to be fully discharged by a superficial observance of conventional forms.
The accident occurred at about seven-fifty o'clock in the morning. The bell on the engine to which the train was attached was operated by an air mechanism and it seems to have been out of kelter, because the bell rang from the time the train left Plant City and after the train had stopped at Seffner. He did not memorize the schedules although he had been on that run about "three winters," yet he "reckoned" that his train was an hour or more late. He knew that the crossing under usual conditions was a dangerous one; on this occasion rendered more so by the presence of *Page 365 
some cars on the side track. Neither he nor the fireman could see the highway to the eastward and no traveler upon it who might appear to be desirous of crossing. The train was a light one in comparison with other passenger trains. It was one which could not be stopped as easily within a given distance as a heavier train because in the latter there is a greater amount of wheel surface to which the air brakes can be applied.
There is a curve in the track about a quarter of a mile to the northward of Seffner. The engineer had received orders to "slow up" at that curve. He was driving his engine at about fifty miles an hour as he approached that curve but reduced the speed until he passed it, then increased the speed as he approached the crossing. He would have been driving his engine at fifty miles an hour at the crossing, so he said, had it not been for the order which he had to "slow up" for the curve. He knew that people had been killed at the crossing; that the company's agent, himself had been killed there about three years before. About a mile from the crossing there is a mile post on the railroad right of way; between that mile post and the crossing the engineer blew the whistle three times. The curve is a quarter of a mile from the crossing. The last whistle was sounded about ten or fifteen car lengths from the crossing. That would be approximately five hundred feet, yet the train was brought to a stand after the accident when the engineer first became aware that he had struck the automobile so that the front end of the train was about three hundred feet from the crossing. Obviously, if the engineer could have seen the automobile approaching the crossing five hundred feet away he could have stopped his train approximately two hundred feet before he reached the crossing.
Either he saw the danger in which Mr. Watkins was placed and indifferently went on with the train at the *Page 366 
increasing speed which he took up after passing the curve or he followed orders from the company which were given without any regard for the dangers which the existing conditions created at that point.
We are unable to say in view of the evidence that the defendant company used all ordinary and reasonable care necessary to relieve it of liability.
Upon the other hand, the danger was equally obvious to Mr. Watkins and he ignored it. Even if he knew that the train which ordinarily passed that point during the morning was late he could not be expected to know the precise hour when it would arrive. He could not be charged with more information on that point than the engineer. If the engineer or fireman could not see Mr. Watkins when the train was five hundred feet from the crossing it is not likely that Mr. Watkins could have seen the train at that distance when he approached the crossing. But even if he could have seen it, considering the relative speed of the two moving vehicles he could have passed in safety because he had only twenty feet to travel in the time it would have taken the train to travel one hundred feet, and it would then have been four hundred feet away approximately.
It would seem to follow, therefore, that Mr. Watkins did not approach the crossing with ordinary care and prudence because he must have driven his automobile upon the track when the approaching train was within less than one hundred and fifty feet of him and in full view of him. If he could have seen the approaching train that distance or even a greater distance away before his automobile reached the track the greater was the degree of his negligence.
Under the doctrine announced in the Germack case,supra, as both the plaintiff and defendant were at fault the damages should be ascertained upon the basis of the proportion which the fault of one bears to the other, or, as the *Page 367 
Court stated the rule, the damages will be reduced in proportion to the contributory negligence of the injured party.
While we think that both the company and the engineer were at fault in the lack of reasonable prudence with which the train was operated at that point, the degree of recklessness and lack of prudence shown by Mr. Watkins was vastly greater. In this view of the case we think the judgment should be reversed unless the defendant in error will enter a remittitur of $5,000.00; otherwise the judgment will be reversed.
It is not necessary to consider other errors assigned.
It is ordered that the judgment be reversed unless the defendant in error will enter a remittitur of Five Thousand Dollars within fifteen days.
TERRELL, C. J., AND BROWN, J., concur.
WHITFIELD, P. J., AND BUFORD, J., concur in the opinion and judgment.
STRUM, J., absent on account of illness.