FLORIDA EAST COAST RAILWAY COMPANY, A CORPORATION, *Plaintiff in Error*, v. DARTHA CARTER AND EZEKIEL M. CARTER, HER HUSBAND, *Defendants in Error*.

Opinion Filed April 7, 1914.

Rehearing Denied May 9, 1914.

1.  In judging of the sufficiency of a declaration in a suit for damages for personal injuries the essentials of such a declaration set forth in the case of German-American Lumber Co. v. Brock, 55 Fla. 577, 46 South. Rep. 740, are approved and applied.

2.  Railroad companies have the power to make reasonable regulations for the management of their trains, and one who buys a ticket is bound to inform himself of the rules and regulations of the company governing the transit and conduct of the trains upon which he proposes to travel. He should inform himself, when about to take passage on a railroad train, when, where and how he can go, or stop, according to the regulations of the railroad company.

3.  Carriers are held to the highest degree of care for the safety of passengers, and passengers should use ordinary care to protect themselves in getting on or off trains, when safe and suitable means of boarding or alighting from trains are provided. They must take the responsibility of the ordinary incidents of travel, including the stoppage of cars required by statute at railway junctions. and must govern themselves accordingly.

4.  By failing to enforce a rule, a railroad company may allow it to become a dead letter, and in effect waive, abandon or abrogate it.

5.  Where a railroad company fails to enforce one of its rules and a passenger is injured in neglecting to observe it, under

our statutes the mere contributory negligence of the passenger is not an absolute bar to recovery.

6. Where passengers habitually get off the trains at a point where they are not invited to get off, and no effectual means are attempted to be used to prevent them from doing so, there is a duty on the company to see that they have a safe opportunity to alight.

7. An ante mortem statement of a witness purporting to give what the plaintiff in a suit for damages for a personal injury said to him as to how she was injured, tending to contradict her testimony on the stand in the trial, is not competent evidence.

8. ·When the Claim Adjuster of the railroad company visited the plaintiff the day after she was injured in alighting from the defendant's train, she being then in bed, and when he stated in his testimony, among other things, that his purpose in calling on her was to see if he could help her, a rigid cross-examination of this witness was proper.

9. The charges to the jury should be confined to the evidence in the case.

10. A jury should be given some substantial evidence upon questions that are not matters of common knowledge, and physicians' charges and the value of lost time are not such matters.

11. Chapter 6220 laws of 1911, amending section 1496 Gen. Stats. of 1906, does not authorize a trial judge to pass upon the preponderance of evidence, except where the evidence of all the parties shall have been submitted, and it is apparent to the judge that no sufficient evidence has been submitted upon which the jury could legally find a verdict for one party, the judge may direct a verdict for the opposite party.

12. In a suit for damages for personal injuries against a railroad company, the effect of section 3148 Gen. Stats. of 1906,

injury having been shown, is to require the defendant company to show by a preponderance of the evidence that its servants and agents exercised all ordinary and reasonable care and diligence, the presumption being against the defendant company.

13. Under our law a trial judge is not permitted to comment on the evidence, or to give to the jury his views of its weight.

14. Facts which occur in the trial of a case can only be brought to this court for review by a bill of exceptions certified by the trial judge.

15. In this action a railroad company to recover damages for personal injuries, the evidence tends to show that the plaintiff was guilty of contributory negligence, and there is no evidence of money paid out or of indebtedness incurred in endeavoring to have the injured party cured, and no evidence of the extent and value of the loss of service or time, and the amount of the verdict indicates harmful error in the charge that the jury "are entitled to take into consideration any money paid out by the plaintiff in endeavoring to have the plaintiff, Dartha Carter, healed or cured; and loss of time," therefore the judgment should be reversed.

Writ of Error to Circuit Court for Duval County; Daniel A. Simmons, Judge.

Judgment reversed. SHACKLEFORD, C. J., AND COCKRELL, J., dissent.

*Alex. St. Clair-Abrams,* for Plaintiff in Error;

*Bisbee & Bedell* and *A. H. King,* for Defendants in Error.

HOCKER, J.—The defendants in error, who will be referred to as the plaintiffs, brought an action at law

22—Vol. 67.

against the plaintiff in error, in the opinion referred to
as the defendant, in the Circuit Court of Duval County,
Florida, in September, 1910. The declaration contains
two counts. The first count is as follows:

"Comes now Dartha Carter and Ezekiel M. Carter, her
husband, plaintiffs in the above case, by their attorney,
A. H. King, and sues the defendant, Florida East Coast
Railway Company, a corporation under the laws of the
State of Florida, in an action of trespass for this, to-wit:

That during the time herein set forth and for a long
time theretofore, the defendant, Florida East Coast Rail-
way Company, was and still is a corporation doing bus-
iness in the State of Florida, and owning, maintaining
and operating for the transportation of freight and pas-
sengers by the use of cars and steam locomotives oper-
ated thereon a line of railway and system of railroads
in the State of Florida, a portion of which extends from
the town of Pablo therein to the City of Jacksonville
therein; that on or about the 10th day of July, A. D.
1910, at or about 4:45 P. M., the plaintiff, Dartha Carter,
having procured transportation in due course on the pas-
senger train of defendant from the said town of Pablo
to the said City of Jacksonville, boarded and took pas-
sage on the passenger train of the defendant then and
there provided for her passage and proceeded to her des-
tination, the said City of Jacksonville; that upon the ar-
rival of said train of defendant's at the station of de-
fendant in said City of Jacksonville, and after said train
of defendant had come to a standstill, said plaintiff, Dar-
tha Carter, prepared and undertook to leave said train
of defendant and had proceeded for said purpose as far
as, to-wit, the lower or bottom step of the platform of
the passenger coach of defendant attached to defendant's
said train, upon which said plaintiff had been riding as

aforesaid, whereupon said train of defendant was started and run forward whereby said plaintiff was then and there precipitated to the ground with great force and violence; and plaintiff alleges that defendant was guilty of carelessness and negligence in the premises in this, to-wit: that it caused said train to be started and run forward as aforesad, while said plaintiff was in the act of alighting, as aforesaid, from said train and before said plaintiff had time to alight; that by reason of said carelessness and negligence of defendant in so allowing said train to be started and run forward, as aforesaid, before said plaintiff had time to alight, as aforesaid, said plaintiff was precipitated to the ground whereby said plaintiff was painfully, seriously and permanently injured in and throughout her body and by reason whereof there was caused an impacted fracture of the neck of the femur of said plaintiff on the right side, and whereby her right leg was shortened, to-wit, two inches, thereby rendering said plaintiff a cripple for life; and did thereby expose and did subject the said plaintiff to great shame and mortification, by reason whereof said plaintiff, Dartha Carter, has suffered great pain and anguish at all times between said date and the date thereof, and is still suffering the same, and by reason of such hurting, wounding and injuring said plaintiff, Dartha Carter, then and there became lame, sick and disordered and has suffered great pain and anguish and has so continued and suffered for a long time, to-wit, from then to this time, and the said plaintiff was thereby permanently injured and will continue permanently to suffer pain and anguish; and plaintiff, Dartha Carter, was then and thereby during that time and still is rendered incapable of performing her duties and services by her to be done and performed; and the plaintiff, Ezekiel M. Carter, was at the time of

said hurting, wounding and bruising, and has ever since been and is still the husband of the said Dartha Carter, and was then and thereby and has since been deprived of the services, companionship and wifely attention, society and aid of the consortment with said plaintiff, Dartha Carter, and that plaintiffs were obliged to and did necessarily lay out divers sums of money in and about endeavoring to have the plaintiff, Dartha Carter, cured of her wounds, sickness and disorder, as aforesaid, to the damage of the plaintiffs of Twenty-five Thousand ($25,000.00) Dollars; and therefore plaintiff brings their suit and claim Twenty-five Thousand ($25,0,0.00) Dollars damages."

The second count is like the first, except that it alleges defendant caused the train after stopping at Jacksonville, to be suddenly started forward, without notice to the plaintiff, and while she was in the act of alighting, and before she had time to alight, causing the injuries described in the first count.

Each count of the declaration was demurred to on fifteen grounds, among others that no cause of action is shown. These demurrers were overruled, and these rulings are challenged in the first and second assignments of error.

We have examined the authorities cited to sustain the several grounds of demurrer, and we do not think they are based on declarations like those at bar. It is held in the case of German American Lumber Co. v. Brock, 55 Fla. 577, 46 South. Rep. 740, that a declaration in an action at law should by direct allegation, or by fair inference from its direct allegation, contain all the essentials of a cause of action, and when negligence is the basis of the recovery, the declaration should contain allegations of the negligent act or omission complained of,

and also allegations of the injury sustained, and of facts showing that such injury was a proximate result of the negligence alleged. It seems to us that applying this test, each of the counts of the declaration states a cause of action, and the demurrers were properly overruled.

Pleas of not guilty, and several special pleas were filed, upon which issue was joined and a trial had. Among these pleas was one alleging that the defendant in error was injured entirely by reason of her own negligence, and another that the plaintiff in error gave notice in the newspapers published in Jacksonville, and by a notice printed in large letters on the viaduct hereinafter referred to, that no trains would be stopped to receive or deliver passengers on Sunday at a viaduct in the City of Jacksonville; that the trains were obliged to stop at the switch near the viaduct to receive the signal to enter the Terminal or Union Station yard. The jury found a verdict for the plaintiffs, and assessed the damages at $12,-500.00, upon which a judgment was entered, which is here for review on writ of error.

On the 10th of July, 1910, Dartha Carter, one of the plaintiffs, and her son Dahl and daughter Eula bought round trip tickets over the Florida East Coast Railroad from Jacksonville to Pablo Beach, in Duval County, Florida. They went to Pablo in the morning, and about 4:45 o'clock P. M. boarded the train to return to Jacksonville. The track of the defendant railroad crosses the St. Johns river on the drawbridge, proceeds westward in the city, and under what is familiarly called in these proceedings the *viaduct*, being a part of a street leading to Bay street. The defendant's track goes from the viaduct in a westerly direction to the Union or Terminal Station, which is about 200 yards from the viaduct. Between the viaduct and the Terminal Station the Florida

East Coast Line crosses the tracks of the Atlantic Coast
Line Railway and the Seaboard Air Line Railway. The
Florida East Coast Railway is obliged by law to stop its
trains before making these crossings. It maintains a
ticket office underneath the viaduct and keeps a notice
posted over the gate of the steps leading from the viaduct
to the station below that passengers will not be received
or discharged on Sundays. The time table published in
the "Times-Union" and "Metropolis," newspapers pub-
lished in the City of Jasksonville, also state that passen-
gers are not taken on or discharged at the viaduct on
Sundays. But the trains are obliged to stop there on
Sundays because of the State law with reference to cross
ings, and the situation because of its easy access to the
viaduct street presented some temptation to passengers
to alight there, rather than to await the cars' arrival
at the Terminal Station.

It was proven when the train was on the return trip
from Pablo neither the conductor nor any other servant
of the company called out the viaduct station before
reaching it, as is usual, to give notice to passengers who
desire to alight, and have a right to alight at a station.
The defendant in error admitted that she did not make
any inquiry of the depot agent at Jacksonville, the con-
ductor, or any other officer or agent of the railway com-
pany about the schedule of the railroad, or whether her
train would stop at the viaduct.

In the case of McRae v. Wilmington & Weldon R. R.
Co., 88 N. C. 526, it is held: "Railroad companies have
the power to make reasonable regulations for the man-
agement of their trains, and one who buys a ticket is
bound to inform himself of the rules and regulations of
the company governing the transit and conduct of its
trains. It follows that where a passenger purchases a

ticket, he only acquires the right to be carried according to the custom of the road. When he purchases such a ticket, he should inform himself as to the usual mode of travel on the road, and so far as the customary mode of carrying passengers is reasonable, he should conform to it. The requisite information can always be obtained from the agent from whom the ticket is procured, and it is but reasonable to require passengers to obtain the information and to act upon it." (Authorities cited are omitted.)

It is the duty of a person about to take passage on a railroad train to inform himself when, where and how he can go or stop, according to the regulations of the railroad company. Beauchamp v. I. & G. N. Ry. Co., 56 Tex. 239; Summitt v. State, 8 Lea (Tenn.) 413.

On Sundays the train from Pablo to Jacksonville consists of from ten to twelve cars; on week days of from five to six cars. On this particular Sunday the train consisted of about twelve care. As the cars stopped at the viaduct on the return trip, without being in any way invited by the officers or the servants of the company to alight, and the station not having been called, the defendant in error and her son and daughter arose from their seats at the back part of the car and immediately walked to the platform—the daughter Eula in front, Mrs. Carter next behind her, and her son Dahl next to her. Eula, who was a small girl, went down the steps and in attempting to get off fell to her knees. Mrs. Carter reached the lower step and was standing square on it *and was not holding to either railing.* The car jerked and started, and she was thrown to the ground and seriously injured. It does not appear that the jerk was unusual in starting a long train of twelve cars. It is the duty of a passenger to exercise reasonable and ordinary care for

his own safety in boarding or alighting from a train.
4 Elliott on Railroads, top page 499. See also Florida
R. Co. v. Dorsey, 59 Fla. 260, 52 South. Rep. 963. Rail-
road companies have a general power to make reasonable
rules and regulations for the government of their busi-.
ness, of which passengers must take notice, and courts
will not interfere with. 4 Elliott *supra,* top page 368.
See Florida Southern Ry. Co. v. Hirst, 30 Fla. 1, 11
South. Rep. 506. "If carriers are held to the highest de-
gree of care for the safety of passengers, passengers'
ought to be held to the exercise of ordinary care to pro-
tect themselves, more especially while railroad companies
as a general rule are required to provide means of access
to and egress from their trains and stations which can
be used without danger. A passenger who leaves a train at
a place which is not a regular station, is held to the duty
of exercising diligence in observing the surroundings in
order that he may reasonably determine whether the
train has arrived at the place where the company intended
him to alight. He must take the responsibility of ordi-
nary incidents of travel, including the stoppage of cars
required by statute at railway junctions, and must gov-
ern himself accordingly."

According to the statement of the defendant she was
riding in a coach near the center of the train. The en-
gine was near the railroad crossing a hundred yards or
more west from the viaduct; at the place where she got
off there was no platform or other indications that it
was a place where passengers were expected to alight.
Mrs. Carter says she took the Times-Union, but never
took the trouble to examine the railroad time tables to
see whether the cars stopped at the viaduct to deliver
passengers on Sundays. The conductor of the train tes-
tified that he was not permitted to lock the doors of the

cars, and that he could not prevent passengers, when the cars stopped at any crossing, the viaduct station or anywhere else, from jumping off the trains if they wanted to do so. The accommodations for discharging passengers at the Union Station are apparently sufficient, and there is no complaint that they were insufficient or dangerous. Dahl Carter testified that he wanted to get off at the viaduct because the street cars were generally less crowded than at the Union Station.

From the testimony of the engineer of the train, it is shown that there is always some jerking in starting a long train of cars. This is not denied, and it is not shown that the jerking in this instance was unusual. It is contended by the defendant in error that inasmuch as the railroad company did not enforce the rule against passengers getting off at the viaduct station on Sundays, such conduct may be regarded by the traveling public as a license to get off when the train stopped. Paragraphs 201, 202, 202a, 1 Elliott on Railroads. In section 202a *supra,* it is said: By-laws may often be waived, and so too in some instances at least, may a rule of a railroad company. By failing to enforce a rule the company may allow it to become a dead letter, and in effect waive, abandon or abrogate it. We think this is a sound principle of law. Britton vs. Atlantic & Charlotte Air-Line Ry. Co., 88 N. C. 536. The case of Mercher v. Texas Midland R. R., (Tex. Civ. App.) 85 S. W. Rep. 468, is somewhat similar to this. The trial judge in this case sustained a general demurrer to the complaint, and the plaintiff not amending, a final judgment was entered dismissing the case. The second headnote is as follows: "Where a passenger attempted to alight from a train at a crossing without notifying those in charge of the train, the facts that it was known custom for passengers to

alight at the crossing, and that the train started with a jerk which threw the passenger from the step, did not relieve him from the effect of his own contributory negligence." The case is not controlling because of our statute (paragraph 3149 Gen. Stats. of 1906). Here contributory negligence does not prevent recovery. The case at bar seems to be an unusual case. There was a station used in the week days under the viaduct for selling tickets and receiving and discharging passengers. The railroad gave notice it would not be used on Sundays. It was near the railroad crossing, and for that reason the cars were obliged to stop before making the crossing into the Terminal Station, which was near by. In spite of the notice that the railroad would not receive or discharge passengers on Sunday, passengers habitually got off there on Sunday. But no officer or agent of the company was present to see that they safely alighted, or that the rule was enforced. It was under such circumstances that Mrs. Carter was injured in alighting from the train. We think she was justified in thinking, if she knew of it, that the rule was abandoned or waived. Under such circumstances it was the duty of the company to see that she had an opportunity to safely alight from the train. 6 Cyc. 613, 614. The situation of the viaduct station appears to have been peculiarly tempting to many passenger to alight there.

### Twelfth Assignment of Error.

The defendant moved the court to instruct the jury to find it not guilty, which motion was denied, and this affords the ground of the most important assignment of error. There is no doubt in our mind that the plaintiff is shown to be guilty of contributory negligence in sev-

eral particulars. She took no pains to inform herself whether the train stopped at the viaduct station to deliver passengers, and she was not so informed by the conductor or other agent of the company. Nothing in the immediate surroundings where she got off indicated it. But we cannot say that her negligence was the sole proximate cause of her injury. Under the peculiar circumstances of this case, we think it was peculiarly the province of the jury to determine whether "the company made it appear that their agents exercised all ordinary and reasonable care and diligence, the presumtion being against the company." Sec. 3148 Gen. Stats. of 1906. The company knew that their rule not to discharge passengers on Sunday at the viaduct station was habitually violated. No apparently effective means to prevent such violation was attempted so far as the record shows. Numbers of passengers seem to have treated it as waived or abandoned. It would seem then that it was the duty of the company to adopt some means to prevent injury to passengers who attempted to alight there. McDonald v. Long Island R. Co., 116 N. Y. 546, 22 N. E. Rep. 1068; Poole v. Consolidated St. Ry. Co., 100 Mich. 379, 59 N. W. Rep. 390.

The case of Mercher v. Texas Midland R. R., (Tex. Civ. App.) 85 S. W. Rep. 468, is relied on by the defendant company. The case in some respects is like the instant one, and the court held that the contributory negligence prevented recovery by him. But under our statute, section 3149 Gen. Stats. of 1906, it is not a bar to recovery. If the plaintiff and the company are both at fault, the plaintiff may recover, but the damages are to be increased or diminished by the jury in proportion to the amount of default attrabutable to him. We are not able to say that the negligence of the plaintiff was the sole proximate

cause of her injury. That was a question for the jury. What we have said also applies to the thirteenth assignment, which is based on the refusal of the court to instruct the jury to find the defendant not guilty.

The fourth assignment of error does not appear to be very important, as neither in brief or on the assignment is there any reference to the page or pages of a long record of nearly 500 pages where the facts upon which it is based are to be found.

The sixth and seventh assignments of error relate to the refusal of the court to admit in evidence a statement made by W. M. Wadsworth and signed by him prior to his death, purporting to give what Mrs. Carter said to him as to how she was injured. This tended to contradict her statement as a witness on the trial. It is admitted that this statement by Mr. Wadsworth is not unusually regarded as competent evidence. We discover no sufficient reason in this instance to depart from the rule excluding such a statement, if it should ever be done. Mr. Wadsworth was sick for several months before his death, and no effort was made to take his deposition.

The eighth assignment of error is based on the action of the court overruling an objection of the defendant to a question propounded by plaintiff's attorney to Mr. Stillman, on cross-examination. The question was: "For the real purpose of making a better defense for the railroad company as their Claim Adjuster, was it not?" Mr. Stillman called on Mrs. Carter the day after she was injured. She was then in bed. He testified that he wanted to see if he could help her, as she was in destitute circumstances. He also said he wanted to get the real facts to report to his company. He was its Claim Adjuster. He said he took a statement from her of the facts of her injury. We do not think the court committed re-

versible error in permitting the question. The circumstances of the Claim Adjuster going to her home so soon after she was injured and asking from her a written statement of the facts warranted a rigid examination into his motives.

The tenth and eleventh assignments question the action of the court in overruling the objections of the defendant to questions propounded to the plaintiff, Mrs. Carter, as to whether or not at the time she got off the train she knew of any rule or regulation of the railroad company that passengers were not to get off at that station, or if she had ever heard of any such rule or regulation in any way whatever, referring to rules and regulations as to stopping of the trains. Mrs. Carter answered both questions in the negative. It is contended that permitting these questions released the plaintiff from the duty of ascertaining whether or not the defendant's train stopped at or near the viaduct station for the purpose of receiving or delivering passengers on that day. The plaintiff justifies the questions on the ground that the special pleas of the defendant alleged that Mrs. Carter *knew full well* that the place at which the train was temporarily stopped was not a place on that day at which passengers were invited or authorized to alight from defendant's cars." Her actual knowledge as distinguished from her duty to infrom herself seems to have been made an issue by the defendant. We cannot therefore say the court erred in permitting the questions. Taken in connection with the instructions given to the jury at the request of the defendant setting forth the duty of a passenger to advise himself as to the stopping places of the train and whether he is invited or expected to alight from a train at a particular stopping place, we do not see how the defendant was injured by the action of the court.

The fourteenth assignment of error is based on a portion of the charge which is as follows: "You are entitled to take into consideration any money paid out by the plaintiff in endeavoring to have the plaintiff, Dartha Carter, healed or cured; any *loss of time.*"

There was no proof of any money paid out in having Mrs. Carter healed or cured, and no proof of what time she lost. There is proof that she was attended by physicians. This court has held that the charges of a trial judge should be confined to the evidence in the case. Livingston v. Anderson, 30 Fla. 117; Judge v. Moore, 9 Fla. 269, 11 En. Pl. and Pr. 158.

What effect this charge had upon the jury in estimating damages, we are unable to say. The jury knew from the evidence that Mrs. Carter had been attended by the physicians, and might reasonably infer that they had been paid for their services, or that they expected to be paid, but there is no evidence of any amount paid, or what they expected to be paid. Nor is there any proof of how much time Mrs. Carter lost by reason of her injury, or its value. The jury were apparently invited to take these matters into consideration and may have construed the charge as permitting them to make their own estimate of what should be allowed. This seems to be the view of the attorney for the plaintiff. We cannot agree to this view of the matter. Of course a jury is not obliged to adopt literally the testimony of any witness, but they should be given some substantial evidence upon questions that are not matters of common knowledge, and physicians' charges and the quantity of time lost and its value in a case like this cannot be considered as matters of common knowledge. We are unable to say affirmatively that this charge was not misleading and prejudicial to the defendant. A charge must be confined to

the issues made by the pleadings (Mullikin v. Harrison, 53 Fla. 255, 44 South. Rep. 426) and the facts in evidence (South Florida R. Co. v. Weese, 32 Fla. 212, 13 South. Rep. 436).

The fifteenth assignment is based on a portion of the Judge's charge that in substance required the plaintiff to show "by a preponderance of the evidence she was injured as alleged in the declaration, and that being shown, it was the duty of the defendant to show, by a preponderance of the evidence that its agents and servants used all due prudence and care to prevent the happening of the accident; and if you find that due care and prudence was used, then you will find the defendant not guilty. If the plaintiff was injured as alleged, and the defendant does not show by a preponderance of the evidence that its agents and servants used due diligence and care to avoid the injury and accident you should find for the plaintiff and assess the damages as I have stated." The charge seems to be based on Section 3148 Gen. Stats. of 1906, to which we have referred. The contention in favor of the assignment is that it is the duty of the trial judge to pass upon the preponderance of the evidence under the authority given by Chapter 6220 Laws of 1911, amending Section 1496 Gen. Stats. of 1906. We do not construe this act as applying to any case except when the evidence of all the parties shall have been submitted it is apparent to the judge that no sufficient evidence has been submitted upon which the jury could legally find a verdict for one party, the judge may direct a verdict for the opposite party. It could not have been the purpose of the statute to take from the jury the right and duty of passing upon conflicts in the testimony, and of determining the weight and preponderance of the evidence. If the effect of section 3148 is not to require the defend-

ant, injury having been shown, to show by the preponderance of the evidence that its agents exercised all ordinary and reasonable care and diligence, the presumption being against the defendant, the then statute is without meaning.

The sixteenth assignment is based on the 8th paragraph of the Judge's charge. The defendant seems to proceed on the theory that when the railroad company had given notice in the newspapers, and posted a notice at the top of the viaduct that passengers would not be received or discharged at the viaduct station, it had discharged its duty to the traveling public. The argument presented here by it in support of the assignments, of error seems to disregard the doctrine that though a railroad company has the right to make reasonable rules and regulations they are not inflexible, but may be waived or abandoned by the conduct of the company, and if it permits its rules to be habitually violated by passengers, they may be treated as waived or abandoned. The evidence abundantly shows that this was the case with reference to the rule about receiving and delivering passengers at the viaduct station on Sundays. The conductor of the train on the particular Sunday when Mrs. Carter was injured stated that passengers habitually got off there in numbers when the train stopped, and he had no means of preventing them. Other witnesses testified to the same effect. The eighth paragraph of the charge which is here involved is as follows:

"Gentlemen, if you find from the evidence that the viaduct station, where the train of the defendant is alleged to have stopped on the afternoon of the alleged injury to the plaintiff Dartha Carter, was a regular station of the defendant for the taking on or discharging of passengers by some of its trains, or on certain days, and if

you further find from the evidence that the train on which the plaintiff Dartha Carter was then a passenger actually did stop at the said station long enough and under such circumstances as to lead an ordinarily prudent person to believe that such stop was for the purpose of discharging passengers; then it became the duty of the defendant's agents and employes in charge of such train to use care and prudence in again starting the train to see that passengers alighting from said train would not be injured by such starting. If under such circumstances they failed to use such care and prudence, they were guilty of negligence, and if such negligence contributed to the injury of the plaintiff Dartha Carter, if you find that she was injured as alleged in the declaration, then you should find for the plaintiffs and assess their damages according to the rule of damages already given you in charge by the court, making proper reduction in the amount on account of any contributory negligence on the part of the plaintiff Dartha Carter, if you find she was guilty of such contributory negligence. But if you find from the evidence that the plaintiff Dartha Carter actually knew that such stop was not made for the purpose of permitting passengers to alight from said train, and that notwithstanding such knowledge on her part, she nevertheless attempted to leave the train at that point, and alighted from it while it was in motion, and that she was injured solely as a result of so alighting, then you will find the defendant not guilty." It seems to us that this paragraph fairly states the law and we find no reversible error in it.

The seventeenth assignment of error is based on the following instruction to the jury at plaintiff's request: "You will determine from all the facts and circumstances in the case whether the plaintiff had reasonable ground

to suppose that when the train stopped, as it did, that it was for the purpose of permitting passengers to alight, for whether the plaintiff was herself negligent is to be determined by whether she acted as an ordinarily prudent person in like circumstances would act." Under the circumstances of this case, we find in it no reversible error.

The eighteenth assignment of error is based on the third instruction given at the request of the plaintiff. It is as follows: "Again, you will determine from all the facts and circumstances of the case whether the railroad company knew, or reasonably ought to have known, that passengers upon the train would suppose from all the facts and circumstances of the case, that when the train stopped, as it did stop, that it was for the purpose of permitting them to alight from the train. If they knew, or reasonably ought to have known, that passengers would have so supposed, then it was the duty of the railroad company to take reasonable care and precaution that the train was not started under such circumstances as to imperil a passenger alighting from the train." We do not agree with the contention that there is no evidence to support this construction, and that it is in conflict with it. There is abundant evidence that passengers got off the train on Sundays at this place, and had been doing so some time. There is no evidence that they were ever interrupted in doing so, or ever attempted to be prevented. We cannot affirmatively say that they might not have supposed they had the right to alight, or at least might alight if so inclined.

The twentieth and twenty-first assignments of error are based on the refusal of the court to give the first and fourth instructions requested by the defendant. They are as follows:

"1. If the jury believe from the preponderance of the evidence that on the day of the alleged injury defendant's train was stopped for the purposes of receiving the signal to proceed into the Union Station; and, if the jury believe from the preponderance of the evidence that the plaintiff was not expected nor invited to alight at the place where the train was stopped; and, if the jury further believe from the preponderance of the evidence that, without knowledge of, or notice from the plaintiff to, any of the employees of the defendant in charge of the train, the plaintiff voluntarily attempted to alight from the train after it had started for the Union Station, then in that event it is the duty of the jury to find the defendant not guilty."

"4. To enable the plaintiff to recover it is essential for her to prove that on the day of the happening of the injury the train was stopped at a place where she, as well as other passengers, were invited and expected to alight and that sufficient time was not afforded for her to safely alight from the train."

These instructions are based on the assumption that the undisputed evidence showed that the railroad company owed no duty to a passenger under the conditions we have heretofore referred to, and could not by the jury have been considered as guilty of contributory negligence. We think the instructions were properly refused. The same objection applies to the twenty-second, twenty-third, twenty-fourth, twenty-fifth, twenty-sixth and twenty-seventh assignments of error.

The twenty-eighth assignment of error is based on the refusal of the court to give instruction No. 17 requested by the defendant. This instruction recites that certain facts in evidence were sufficient to charge the plaintiff with knowledge that she was not expected or invited to

alight from the train on Sunday at a place where the car stopped. We do not think the court erred in refusing to give this instruction because, under all the facts it might have been misleading. It does not follow because a passenger is informed she is not invited to alight at a particular place and other passengers alight there under circumstances which tend to make it appear they are permitted to do so, that the railroad company owes no duty to the passenger alighting or attempting to alight under these circumstances.

The twenty-ninth assignment is based on the refusal of the court to give the nineteenth instruction requested by the defendant. This instruction is practically embraced in instruction No. 22 and additional instruction No. 2 requested by the defendant, which were given, which assert that a railroad company has the right to specify on what days any one or more of its trains will stop at any particular point for the delivery or reception of passengers, and it is the duty of the traveling public to ascertain the rules, regulations and schedules of a company in this particular. A judge is not to be held in error for not in distinct instruction repeating substantially the same proposition. There ought to be some reasonable limit in asking instructions.

We find no reversible error under the thirtieth assignment.

The thirty-second assignment of error is based on the refusal of the judge to charge that "the statement of an injured person made soon after the happening of the alleged injury giving an account of the manner and means whereby such injury was obtained and reduced to writing and read to the injured person and acknowledged by him or her to be correct and signed by the injured person is held in law to be the highest order of evidence as to

how the injury was obtained." No authority is referred to sustain this instruction. Under our law a judge is not permitted to comment on the evidence, or give to the jury his views of its weight. Sec. 1496 Gen. States. of 1906.

The thirty-third assignment does not appear to be argued by the defendant.

The thirty-fourth assignment is based upon the refusal of the court to give the thirtieth instruction requested by the defendant, which in effect seems to be intended as a direction to the jury as to the effect they should give to certain evidence. We see no error in its refusal.

The thirty-fifth and thirty-sixth assignments of error are based on the refusal of the court to give instructions upon matters which may or may not have occurred on the trial. No reference is made in the brief of defendant to the record where they may be found.

Assignments 37, 38, 39, 40, 41, 42, 43 and 44 are based on the refusal of the judge to grant a new trial because of certain remarks and comments by one of the attorneys for the plaintiff upon some of the witnesses of the defendant. They are set forth in the motion and supported by affidavit, but the bill of exceptions certified by the judge does not show that any such remarks were made. Facts which occur in the trial of a case can only be brought to this court for review by bill of exceptions certified by the trial judge.

The only other assignment we deem it necessary to consider, is based on the overruling of the motion for a new trial, wherein the action of the trial judge in charging the jury they "were entitled to take into consideration any money paid out by the plaintiffs in endeavoring to have the plaintiff Dartha Carter healed or cured; any loss of time" is challenged, there being no substantial ev-

idence to justify this charge. As before said, we think this was reversible error.

Where a charge given is in material substance not applicable to the pleadings or to the evidence, and it appears that such charge may reasonably have misled the jury to the injustice of the party duly complaining thereof, it may constitute reversible error.

The plaintiff, Dartha Carter, began her round trip on the defendant's train on Sunday, taking passage at the Terminal Station. In returning the same day the train stopped in obedience to the statute at a railroad crossing just before reaching the Terminal Station. This stop happened to be at or near a point where the defendant had a station under a viaduct that was used for passengers on week days, but not on Sundays. The non-use of this viaduct station on Sundays was duly advertised and posted. Persons habitually alighted from the train on Sundays at this point, while the stop was being made for the railroad crossing. There was no announcement made on the train on which plaintiff was a passenger that the train would stop at the viaduct station, and the stop at or near such station was made on account of the railroad crossing as required by the statute. At the point where Mrs. Carter was in the act of alighting from the car there was no station platform and nothing to indicate an invitation to alight there, or that persons were expected to alight there. It was not the station at which she took passage, and she made no enquiry as to whether she could properly or safely leave the train at that point. Her little daughter fell to the ground in alighting just in front of its mother; and the mother standing on the bottom step without holding on to either of the rails on the platform of the car. was thrown to the ground as the train started, after the brief stop required by law

just before reaching the railroad crossing. These and other circumstances shown by the transcript were to be considered by the jury in determining whether there was contributory negligence requiring the damages to be diminished as provided by the statute.

There being evidence of contributory negligence, and no evidence of money paid out, or indebtedness incurred in endeavoring to have the injured party cured, and no evidence of the extent and value of the loss of service or time, the amount of the verdict indicates harmful error in the charge that the jury "are entitled to take into consideration any money paid out by the plaintiff in endeavoring to have the plaintiff, Dartha Carter, healed or cured; any loss of time."

The judgment of the Circuit Court is reversed.

TAYLOR AND WHITFIELD, J. J., concur.

COCKRELL, J., *dissenting*.—I fail to find reversal compelling error in giving the charge for which this case is reversed. It confines the damages to expenses actually paid, excluding those incurred, and of this the guilty corporation may not complain. The verdict in this case does not indicate that an intelligent jury went out of its way to include expenses not proven to be paid, or allowed one dollar for expenses incurred or paid.

As to the item "loss of time," as an element of damage to the husband, who has been wrongfully deprived of the services of the wife and mother, there is evidence that before the accident she did much of the housework and supervised the upbringing of their numerous small children, and they were people of meagre means. The court does not indicate in what respect this portion of the

charge is defective, and I know of no one more expert or skilled than a jury drawn from all ranks of life.

Should I be mistaken, however, in my view of this charge and it be error, yet this single error enters not at all into the question of liability, but only as to the quantum of damages, and therefore it seems peculiarly the case contemplated by the legislature in enacting Chapter 6467, Laws of 1913. "That hereafter an Appellate Court in reversing a judgment of a lower court brought before it for review by writ of error may, by the order of reversal, if the error for which reversal is sought is such as to require a new trial of the action in the court below, direct that a new trial shall be had on all the issues shown by the record or upon a part of such issues only, and when a reversal is had with the direction for a new trial to be had on a part only of the issues, all other issues shall be deemd to be settled conclusively in favor of the defendant in error."

There has been a fair submission of the question of negligence to the jury, without error in that submission by court or jury, and this court, acting under that authority, which is in line with the most enlightened public opinion of the day, justly decrying against the expense and delays of the courts, should accept this its first opportunity to declare itself in sympathy with such legislation.

SHACKLEFORD, C. J., concurs in this dissent.