ATLANTIC GREYHOUND LINES, a corporation, v. MRS. SUSIE B. LOVETT, widow.

184 So. 133.

Division A.

Opinion Filed October 10, 1938.

Rehearing Denied November 8, 1938.

506

*Milam, McIlvaine & Milam, Donald K. Carroll* and *J. Henry Taylor,* for Plaintiff in Error;

*Joseph H. Ross,* for Defendant in Error.

BUFORD, J.—The writ of error brings for review judgment in favor of plaintiff in a suit for damages occasioned by personal injuries.

The defendant in error has not favored us with a brief, and, therefore, that the case may be determined in accordance with the applicable principles of law, the burden of independent research has fallen upon us.

In this opinion we shall take up and discuss the questions presented by the plaintiff in error *seriatim.*

*Question I:* Where a declaration is based upon a carrier's negligence in striking, pushing, pulling and shoving a passenger resulting in an injury, and carrier pleads contributory negligence on the part of the passenger in that carrier had a reasonable rule in force that certain baggage must be carried on top of its motor bus in a place there provided and not inside of the bus, and that alleged injury occurred by reason of passenger resisting carrier's effort to remove the baggage on top of the bus, and there is no replication by the passenger of a waiver of such rule:

Was evidence offered by the passenger of a waiver of such rule admissible?

The Court below answered this question in the affirmative. This ruling was correct, and is supported by the following authorities:

"As a general rule on an issue of contributory negligence defendant may introduce evidence of any facts which tend to establish his defense, and plaintiff may avail himself of any facts which tend to disprove such negligence,

even though not alleged in his declaration or complaint."
45 C. J., Negligence, par. 734, pp. 1143.

The case of Spaulding v. Chicago St. P. & K. C. Ry. Co.
(Iowa), 67 N. W. 227, was an action by the administrator
of the estate of one Hanley to recover damages resulting
from the death of Hanley. The defendant railroad denied
all wrong on its part and claimed that the accident resulted
from the fault of Hanley in being intoxicated, and unfit to
perform his duties when the accident occurred, in violating
the *rules of the company which he was under obligations
to obey,* and in attempting to make an uncoupling of .cars
in a negligent manner. There was no replication filed by
the plaintiff. In discussing the admissibility 'of evidence
showing an abandonment of the rules by the railroad com-
pany, the court said:

"Testimony was introduced on the part of the plaintiff
to show that it was the custom of the employees of the de-
fendant to uncouple cars while they were in motion; that it
was as safe to do so as to uncouple them when not in mo-
tion; that the decedent attempted to make an uncoupling in
question in the manner usually adopted on the defendant's
road; and *that the officers of the defendant who had super-
vision and control of such matters knew of that method of
doing such work, but made no objection to it, although it
was in violation of printed rules which defendant had
adopted and given to its employees (including the decedent)
for their guidance.* We are of the opinion that the testi-
mony thus given was relevant and competent. A railway
company cannot escape liability by showing a violation of
rules which are never enforced, and which are habitually
disregarded, with the knowledge and apparent acquiescence
of officers whose duty it is to enforce them. Lowe v. Rail-
way Co., 89 Iowa 425, 56 N. W. 519; Strong v. Railway
Co. (Iowa) 62 N. W. 800. The evidence in question tended

to show that the rules upon which the defendant relies were habitually disregarded by its employees, and that the officers who were charged with the duty of enforcing them knew that the employees of the defendant customarily disregarded them, but made no attempt to enforce them. * * * To avoid repetition, we may say here that the evidence fully warranted the jury in finding that the rules upon which the defendant relies had been waived by it, and were not in force." (Underscoring ours.)

The plaintiff has alleged that she was injured "without any fault or negligence on her part," and there should be no error in permitting proof of all the circumstances tending to support that allegation. It was competent, under that allegation, for the defendant in error to show, if she could, that she had no knowledge of the rule of the company and that, in fact, the company had abandoned or waived the rule. Then it was for the jury to say whether, under such circumstances, the defendant in error was guilty of contributory negligence.

In Florida East Coast Ry. Co. v. Carter, et al., 67 Fla. 335, 65 So. 254, one of the questions before the Supreme Court was whether or not the railroad company had waived, abandoned or abrogated a rule prohibiting passengers from alighting at "the viaduct," a place located a short distance from the Terminal and at which the trains of defendant had to stop before proceeding into the Terminal. The action was for personal injuries sustained by the plaintiff when she alighted from the train at "the viaduct." One of the pleas was the contributory negligence of the plaintiff, in that she had violated a rule of the company in leaving the train at that particular place. Plaintiff did not file a replication, but evidence was admitted showing that many people alighted at that particular place and it was held that the company had waived, abandoned and abrogated the rule.

Although the admissibility of the evidence concerning the waiver was not directly before the court in this case, it does have a tendency to show the attitude of this Court in respect to the question at bar.

The authorities cited by plaintiff in error in support of its contention are somewhat out of point, in that they refer to a waiver as applied to provisions of a written contract, while the real question concerns the admissibility of evidence of a waiver under a plea of contributory negligence of plaintiff in that she violated a rule of the company.

*Question II:* Where a declaration is in two counts and the court, referring to a certain plea which was applicable to both counts, charges the jury in the words,—"That plea is a denial of one of the material allegations of the declaration, and leaves the burden upon the plaintiff to prove the *other* count of the declaration by a preponderance of the evidence"—Was such charge confusing in that it amounted to an instruction that the plea applied to only one count of the declaration?

The court below answered this in the negative.

This contention is clearly untenable because of the fact that the charge specifically says "That plea is a denial of one of the material allegations of the declaration." This should be sufficient to show that the plea applied to the declaration as a whole and not to one count. However, the plaintiff in error further contends that the charge is erroneous or misleading because it permitted the jury to assume that the other count did not have to be proven by the plaintiff by a preponderance of the evidence.

In Georgia Southern & F. Ry. Co. v. Hamilton Lumber Co., 63 Fla. 150, 58 So. 838, it is held that "Whether a charge given to the jury is erroneous or misleading should be determined by a consideration of the charge complained of in connection with all the other charges given, and the

pleadings and evidence in the case," and "When it appears from the whole record that an alleged misleading charge could not reasonably have influenced the verdict to the injury of the complaining party, a new trial on that ground should not be granted."

In discussing another plea in the case at bar the lower court instructed the jury as follows: (Tr. 111.)

"The result of that plea is, with reference to these two counts, to put the burden upon the plaintiff of proving by a preponderance of the evidence, the claim made by her in the declaration. *In other words before you can find for the plaintiff in this case, you must find that the plaintiff has proved by a preponderance of the evidence one or the other of those counts."* (Underscoring ours.)

Taken in connection with all the charges given it is clear that the charge in question was not misleading, but conceding arguendo that the charge may be said to be misleading it is not shown that it could have reasonably influenced the verdict to the injury of appellant.

*Question III:* When carrier's motor bus is inside of station at a time substantially prior to the commencement of the passenger's journey, the bus not in motion, the front door open for passengers to enter, and passenger's injury is the result of the carrier's negligent striking, pushing, pulling and shoving of passenger, and such negligent act had no connection with the actual transportation of the passenger:

Was the carrier held to the highest degree of care toward the passenger?

The court below answered in the affirmative.

The plaintiff in error has misstated the facts in his question. In fact, the injury occurred just a few minutes before the bus left and the plaintiff was in the act of boarding the bus at the time she was injured.

There is some conflict of opinion as to the degree of care required as to passengers who are in the station or depot. The rule appears to be that when the passenger is entering or leaving the vehicle the carrier owes her the highest degree of care.

"As to the degree of care required in the case of those who, while considered as passengers, are not being actually transported, there is a sharp conflict of opinion. There are many cases expressive of the view that the requirement of extraordinary care, being based upon the risk necessarily involved in the transportation of passengers, is limited to actual transportation alone, and that as to all passengers not in actual transit, the carrier is required to exercise only ordinary care. Thus in accordance with this view, a railway company is required to exercise only ordinary care and prudence toward a passenger who is temporarily prevented from continuing his journey.

"Another line of cases, however, maintains the view that the carrier's duty to a passenger is the exercise of the highest care as long as the relationship subsists, from the time the person becomes a passenger until his status as such ceases and he has completed his journey and left the carrier's premises. *There would seem to be general accord upon the proposition that the same high degree of care is required of the carrier as to passengers when entering or leaving the vehicle as when being transported therein.*" (Underscoring ours.)

In 10 Am. Jur., Carriers Sec. 1348, pp. 924, and in a note in 33 L. R. A. (N. S.) 855, on "Degree of Care Toward Passenger at Station" the following distinction is made: (p. 857).

"The cases involving the duty of the carrier in taking on, or setting down, passengers, seem so clearly to involve a condition that differs materially from what is ordinarily

regarded as the situation of the passenger at the station, that they have been excluded from this note."

And in 10 C. J., Carriers Sec. 1348, Pp. 924, it is said:

"The carrier is bound to exercise care in securing the safety of the passenger while boarding and alighting from its cars or other conveyances, and the degree of care required in the discharge of this duty is the highest care, or the care which a very prudent person would use under the circumstances, that is, *that high degree of care which is required with reference to the transportation of passengers.*"

In Pere Marquette R. Co. v. Strange, 171 Ind. 160, 84 N. E. 819, cited by plaintiff in error, the injury occurred on the grounds of the depot. In Taylor v. Pennsylvania Co., 50 Fed. 755, the injury occurred while the passenger was going through the gates of the depot leading to the tracks. And in considering Pelote v. Atlantic Coast Line R. Co., 60 Fla. 159, 53 Sou. 937, we consider also the case of F. E. C. Ry. Co. v. Carter, *et al.,* 67 Fla. 335, 65 Sou. 254 (headnote 3) which reads as follows:

"Carriers are held to the highest degree of care for the safety of passengers, and passengers should use ordinary care to protect themselves in getting on or off trains, when safe and suitable means of boarding or alighting from trains are provided."

In the latter case the plaintiff recovered $12,500.00 for injuries sustained when alighting from a train at a place outside the terminal and in violation of a published rule of the company, but was reversed by this Court because of an erroneous instruction.

*Question IV:* Where the declaration is based upon carrier's negligence in striking, pushing, pulling and shoving passenger:

Was it error to charge the jury on the law of (1) ejecting a passenger and (2) assault and battery?

The Court answered in the negative.

The first count of the declaration charges that the defendant by its servants and agent, "did negligently and carelessly strike, push, pull and shove your plaintiff, and did forcibly and without cause negilgently and carelessly pull, shove and push her on the steps of said bus and in said bus or at its entrance."

The second count charges that the defendant, by its servant or agent, "did negligently and carelessly assault, strike, push, pull and shove your plaintiff, and did wantonly, forcibly, maliciously and willfully pull, shove and push her on the steps of said bus and in said bus and at or near its entrance." The plaintiff testified that right after the injuries were inflicted she left the bus.

It was the duty of the Court in its instructions to present every theory supported by the evidence when properly requested. 10 Am. Jur. Carriers Sec. 1666, pp. 404.

The plaintiff in the court below testified that the defendant's servant or agent attacked her and forced her thumb back with such force it tore the end of her glove. This testimony alone, together with the allegations of the declaration set out above are sufficient to present the theory of an assault by an employee of the carrier.

Plaintiff also testified that shortly after this she left the bus. It was not necessary for her to be forcibly ejected from the vehicle in order to present a theory of her case on the objection of a passenger; if she presented sufficient evidence to constitute a cause for leaving the bus she could have recovered for being ejected. The evidence concerning the assault was a sufficient showing and she did not have to wait until she was forcibly expelled before being entitled to recover for an objection. 10 Am. Jur., Carriers Sec. 1537, pp. 312.

In view of the fact that the pleadings and evidence pre-

sented the issues of an ejection or expulsion and assault, the cases cited by plaintiff in error are not controlling:

*Question V:* Was it error to charge the jury:

"She (the passenger) also would be entitled to recover for physical and mental suffering, and the amount for such suffering is in the reasonable discretion of the jury?"

The court below answered in the negative.

"The amount of an award for mental pain and suffering rests ordinarily in the sound and intelligent discretion of the jury. Direct evidence as to mental suffering is unnecessary in order that there may be an award therefor, and according to some authorities evidence of mental suffering other than evidence of the injury which is the alleged cause of action is inadmissible. According to other authorities, however, the admission of direct evidence as to mental anguish is not erroneous, *although it would seem that in any event it would not control the judgment of the jury based upon their own knowledge and experience of human nature.*"

10 C. J., Damages, Sec. 222, pp. 925.

"The defendant's counsel, however, contends that the recovery in the action was excessive. In this class of cases no precise rule exists, by which the extent of the recovery can be prescribed; for the compensation to be received is, to be awarded for pain and suffering which cannot be accurately measured by amounts. (Ranson v. N. Y. and Erie Railway Co., 15 N. Y. 415.) The rule so carefully maintained and guarded in actions upon contracts, and for tortious injuries to property, is incapable of being applied where the injury is to the person; for those injuries are without precise pecuniary measure. The law has accordingly, in this class of cases, committed the determination of the amount of damages to be awarded to the experience and good sense of jurors. *And where the verdict rendered*

*by them may reasonably be presumed to have resulted from an honest and intelligent exercise of judgment upon their part, the policy of the courts is, and necessarily must be, not to interfere with their conclusion.* (Wightman v. City of Providencee, 1 Cliff. 524. Caldwell v. New Jersey Steamboat Co., 56 Barb. 425.)" (Underscoring ours.)

. We note the following charge appearing in the record: · "Gentlemen, those damages, of course, must be proved by the preponderance of the evidence, just like any other material allegation in this count. The burden is upon the plaintiff to prove that."

Therefore, if any error was in fact made by the court below, the same was harmless.

*Question VI:* Where one count of the declaration is based·on carrier's negligently assaulting, striking, pushing, pulling and shoving passenger, done wantonly, forcibly, maliciously and wilfully, and the uncontradicted evidence was that passenger's injury was received as a result of the carrier attempting to enforce its reasonable rule that certain baggage of the passenger could not be carried inside of carrier's bus, but must be placed on top of the bus in a place there provided for it:

Was it error to charge the jury on the law as to punitive damages?

The court below answered in the negative.

Birmingham Ry. Light & Power Co. v. Taylor (Ala.), 60 So. 979, was an action for personal injuries against a railroad. There were two counts in the declaration, one based on simple negligence and the other on wantonness or wilfulness.

"The defendant requested three charges, each of which was refused by the court, all varying in phraseology, but raising the one question here as to whether or not the trial court should have instructed the jury affirmatively that they

could not assess any punitive damages in the case. If the act of the defendant's servants or agents, as a proximate consequence of which the injuries complained of were received, was either wanton or willful, or there was any evidence from which the jury could fairly infer it, the court, of course, properly refused the instructions requested. To constitute willfullness, there must be design, purpose, intent, to do wrong and inflict the injury. To constitute wantonness, the party doing the act, or failing to act, must be conscious of his conduct, and, without having the intent to injure, must be conscious, from his knowledge of existing circumstances and conditions, that his conduct will naturally and probably result in injury. L. & N. R. R. Co. v. Anchors, 114 Ala. 499, 22 South. 279, 62 Am. St. Rep. 116. Wantonness has been again defined to be 'the conscious failure of one, charged with the duty of exercising due care and diligence, to prevent an injury after the discovery of the peril, or under circumstances where he is charged with a knowledge of such peril, and being conscious of the inevitable or probable results of such failure.' " B. R. L. & P. Co. v. Williams, 158 Ala. 390, 48 South. 96.

"Thus the carrier may be liable in exemplary damages for wanton misconduct or gross negligence of its conductor or other employees in assaulting a passenger, or in failing to protect him from assault by fellow passengers or others, or for his malicious, willful, and wanton insulting conduct toward a passenger." 10 C. J., Carriers, Sec. 1398, pp. 987-88.

"Gross negligence within the above rules has been held to consist in that entire want of care which raises a presumption of a conscious indifference to the passenger's safety." 10 C. J., Carriers, Sec. 1398, pp. 990.

"The requisites of an act, upon which is sought to predicate recovery of exemplary damages, are its willfulness

and gross disregard for the safety of others. Such conduct may manifest itself, in many forms. Thus an assault upon a passenger or intending passenger * * * are examples of conduct justifying an award of punitive damages." 10 Am. Jur., Carriers, Sec. 1684, pp. 420.

*Question VII:* Where carrier files a special plea denying that relationship of passenger and carrier then and there existed; and passenger's testimony is in substance that: carrier told passenger, passenger's baggage must go on top in a place there provided for it and not inside of carrier's bus; that passenger told carrier, passenger might be compelled to take train; that then carrier at the request of passenger removed baggage from top of bus and took check off of passenger's baggage; and passenger received baggage but thereupon passenger carrying passenger's own baggage in defiance of carrier's rule got on bus:

Did passenger's evidence preponderate that the relationship of passenger and carrier then and there existed?

The lower court answered in the affirmative.

Plaintiff in error's summary of the testimony of the defendant in error is correct as far as it goes; however, defendant in error further testified as follows:

"I picked up my bag and walked to the center of the car and raised my bag and put it over in the rack overhead; I came back and got the little suitcase and placed by the side of that, and there was plenty of room for many more suitcases and bags the size of mine, and much larger. When I came back Mr. Graham says 'This bus won't leave until this bag comes off of this part.' By that time the conductor asked for the ticket, and when he did I had lost my ticket, or rather dropped it in the scuffle trying to hold onto my bag. *so I got off and went to the ticket agent and asked for my ticket.*" (Underscoring ours.)

This testimony shows that defendant in error had no intention of leaving the bus, but on the contrary shows a clear intention to remain on the bus and continue her trip.

Layne v. Chesapeake & O. Ry. Co. (W. Vo.), 67 S. E. 1103, was an action by the administrator of Robert Layne predicated on the wrongful death of the deceased, caused by the defendant. Layne came to his death by a gunshot wound inflicted by Howery, a special officer for the defendant. Before decedent reached his destination on his trip 'he had left the train temporarily to engage in an argument with Howery, the result of which was the shooting. In discussing the question of whether or not Layne was a passenger, the Court said:

"We have already seen that misconduct on the part of a passenger, tending to provoke an assault upon himself by a servant, does not destroy the contract of carriage, nor relieve from its obligations. A recalcitrant or abusive passenger retains his status as such; and, even though he assaults a servant, the latter is not thereby justified in using more force than is necessary to repel it. * * *"

"A passenger does not, however, lose his status as such by merely alighting at a regular station for exercise, for lunch or for any business not inconsistent with the pursuit of the journey contracted for."

Therefore, this question depends on whether the rule of the company was in existence or if in existence whether or not it had been waived. In this connection defendant in error testified that on a previous trip over the same bus line she took the bag with her in the bus. Also the district superintendent of the defendant company testified that he didn't know whether there was a set rule published anywhere, and that he had never seen any rule published in the station or distributed to passengers; that not many

passengers take their baggage inside, but if they want to they are allowed to do so.

*Question VIII:* Where the only physical injuries directly sustained by plaintiff at the time of the alleged injury were the pressing back of plaintiff's thumb, plaintiff falling against the door of bus and skinning her arm, suffering nervous chill and complaining of severe pains in shoulder and head requiring treatment of hot packs, ice to head, and sedatives, all causing plaintiff to be confined to bed for three days immediately after injury and to be treated for such injuries by physicians at a total expense of $18.30; and where plaintiff herself testified that thereafter from May 8th, 1934, until the time of trial, to-wit, April 17, 1936, she had four breakdowns and collapses, suffered pain in right arm, right side of head and right shoulder, lost nine months' services as a nurse at $150.00 per month, and that she was still so suffering such pains, all of which she *attributes* to the original injury; and plaintiff's witness, Dr. Chapman, testified, as a result of his examination of the plaintiff made immediately after the injury, that there were no permanent injuries, that her arm would be sore for a week or ten days; and plaintiff's witness, Dr. Owens, testified as a result of his examination of the plaintiff made immediately after Dr. Chapman's examination, that it was *probable* that plaintiff might have required medical treatment in December, 1935, and April, 1936; and there is no evidence connecting the negligence of the defendant with the pain, suffering and loss of earnings alleged to have been suffered by the plaintiff subsequent to the week or ten days after such actual injuries, as limited by her witness, Dr. Chapman, other than the testimony of her witness, Dr. Owens, that from his examination so made immediately after Dr. Chapman's examination, it was

*probable* plaintiff might have required medical treatment in December, 1935, or April, 1936:

Did such testimony fall short of the degree of exactitude required to support a verdict and judgment of $3350.00?

The court answered the question in the negative.

In its question the plaintiff in error has omitted a very important element of damages—humiliation and wounded feelings or mental suffering.

"It is said that the paroxysms of the nervous system induced by the indignity and humiliation attendant upon a wrongful ejection from a vehicle constitute a bodily injury for which damages are recoverable, and ignorance by the carrier of the susceptibility of the passenger to nervous disturbances will not affect its liability in this respect. The circumstances that the passenger did not sustain any physical injury will not prevent recovery for any mental anguish or suffering that resulted from the wrongful ejection." * * *

"The jury has a wide discretion in awarding damages for mental suffering and no precise rule is available by which to determine the quantum of damages properly awarded for this element of injury. Each case will alone set its own standard of compensation." * * *

"There are numerous factors that beg consideration in the assessment of damages for mental suffering and injured feelings. For example, the jury is entitled to consider the ignominy endured by a passenger in consequence of his ejection, the mental suffering and the humiliation which one in his condition of life and standing in the community would ordinarily experience in such a situation." 10 Am. Jur., Carriers, Sec. 1676, pp. 414-415.

On consideration of the entire record, we find no reversible error and, therefore, the judgment is affirmed.

So ordered.

Affirmed.

ELLIS, C. J., and TERRELL, J., concur.

WHITFIELD and CHAPMAN, J. J., concur in the opinion and judgment.

BROWN, J., dissents in part.

BROWN, J. (dissenting in part).—I concur in the opinion and decision of the court except in one particular. I think the verdict was excessive and that some remittitur should have been required.